# CHARLESTOWN.

## ROBERT W. BAYLOR v. THE B. & O. R. R.

### September 9, 1876.

1876.
August Term.

1. It is usual where there is a demurrer to a declaration, and the demurrer is sustained, in whole or part, to allow the plaintiff to amend his declaration, if he ask so to do, and if he desires it, to remand the cause to rules for that purpose.

2. The plaintiff, may of right, amend his declaration at any time, before the appearance of defendant, or after such appearance, if substantial justice will be promoted thereby.

3. The court has control of all proceedings in the office, during the preceding vacation. It may re-instate any cause discontinued during such vacation, set aside any of said proceedings, or correct any mistake therein, and make such order concerning the same, as may be just.

4. In an action on the case against a railroad corporation for killing cattle, by carelessly and unskillfully running their locomotives against them, the declaration need not aver that this was done on the defendant's railroad track.

5. When there are two *issues* joined in an action on two several pleas, and the jury is sworn to try the *issue*,; but they find a verdict responsive to both issues; the misprision of charging the jury to try the issue, is immaterial.

6. The common law imposes on the owner of domestic animals the duty of keeping them on his own lands, or within inclosures, and he becomes a wrong doer if any of them escape, or stray off upon the lands of another.—HELD:

That this common law rule is not in force in West Virginia, it being inconsistent with the legislation of the State, subject to the qualification, however, that animals which are unruly, or dangerous, are required to be restrained.

1876.
August Term.

Baylor
v.
B. & O. R. R.

7. Although, a railroad company, has the right to the free and unobstructed use of its track, and the paramount duty of its employees is the protection of the train, the passengers, and property therein; yet such employees are bound to use ordinary care and diligence, so as not unnecessarily to injure the property of others on the track.

8. It being the duty of the servants of the railroad company, so far as consistent with their other and paramount duties, to use ordinary care to avoid injuring cattle on the track, they are bound to adopt the ordinary precautions to discover danger, as well as avoid its consequences after it becomes known.

9. To an action against a railroad corporation, for negligently killing plaintiff's cattle, the defendant filed a plea of not guilty, and also a special plea in writing, in these words, viz: "And the said defendant, says that the said plaintiff ought not to have, or maintain his action aforesaid against it, because, it says, that at the time the cattle of the plaintiff received the injury complained of in the declaration, they were unlawfully trespassing upon the railroad track of defendant, &c."—HELD:

That such special plea is not good.

*Supersedeas* to a judgment of the circuit court of Jefferson county, rendered on the 10th day of November, 1873, in a suit then pending in said court, in which Robert W. Baylor, was plaintiff, and the Baltimore and Ohio Railroad Company, was defendant, granted on the · petition of said defendant.

The facts of the case appear in the opinion of the Court.

Hon. John Blair Hoge, Judge of said circuit court, presided at the trial below.

*Daniel B. Lucas* for Baylor, defendant in error.

No appearance for plaintiff in error.

HAYMOND, PRESIDENT:

This is an action of trespass on the case brought in the circuit court of the county of Jefferson, by the plaintiff, below, against the defendant, below. On the third day of October, 1870, at rules, plaintiff filed his declaration in the cause, containing two counts. After-

wards, on the twenty-third day of November, 1870, both parties appeared to the cause in the circuit court, and the defendant demurred to the plaintiff's declaration, and to each count thereof, and the plaintiff joined in the demurrer. On the second of December, 1870, by consent of parties, by their attorneys, the cause was, by the court, continued, generally, but, on the same day, the court set aside the order of continuance, and permitted the plaintiff to withdraw his joinder in the demurrer; and, on motion of the plaintiff, the court remanded the cause to rules, with leave to the plaintiff to amend his declaration within sixty days. "The defendant excepted to the withdrawal of the joinder in demurrer by the plaintiff, and the order remanding the cause to rules, and to the leave given the plaintiff to amend his declaration." On February 6, 1871, the clerk made an entry in the cause in these words, viz : " *February rules.* Upon motion of defendant's attorney, this suit is dismissed for want of an amended declaration ; and it is ordered that the plaintiff be non-suited, and that the plaintiff pay to the defendant $5 damages and his costs." Immediately following the preceding entry is the following made by the clerk, viz: " February 7, 1871. Received amended declaration with request that it be filed." Afterwards, at the September term, 1871, the court, on motion of the plaintiff, ordered that the dismission of this suit at February rules. 1871, by the clerk, be set aside, and the cause be reinstated, and that as no trial of the cause could be had at that term, on motion of the plaintiff, remanded the cause to rules, with leave to the plaintiff to amend his declaration at the next rule day, to which ruling of the court, it is entered on the record, that the defendant excepted. It appears that plaintiff did amend his declaration at the next rules (being October rules), and the amended declaration is set out in the record, and contains but two counts. On the twenty-third of November, 1871, the defendant appeared in court, and moved the court to strike out the amended

declaration, filed at rules, because it was the original
declaration amended by interlineation, and refiled ; and
the court overruled the motion, but ordered the plaintiff
to file, among the papers of the cause, a copy of the
original declaration, which was accordingly done, and so
indorsed by the clerk. The record recites that the de-
fendant " excepts" to the rulings of the court last named,
and that the defendant demurred to the plaintiff's declara-
tion, and each count thereof, and the plaintiff joined in
the demurrer. The copy of the original declaration filed
by the plaintiff is set out at large in the record, and
there is this endorsement upon it, and at the foot thereof,
viz :

   " Copy of original *nar*, filed November 23, 1871."

   Teste :

W. A. CHAPLINE, Clerk C. C."

On the fifth of December, 1871, the court overruled
the demurrer to the declaration, and to each count
thereof. At April term, 1872, the defendant filed a plea
of not guilty, and issue was thereon joined, and the de-
fendant also filed a special plea, and issue was made up
and joined thereon. The special plea filed is as follows :
" And for a further plea in this behalf, the defendant
says that the said plaintiff ought not to have or main-
tain his action, aforesaid, against it, because it says
that at the time the cattle of the plaintiff received
the injury complained of in the declaration, they were
unlawfully trespassing upon the railroad track of the de-
fendant, and this it is ready to verify. Wherefore, it
prays judgment, etc." The replication filed by plaintiff
to said plea is in these words, substantially, viz : "And
the plaintiff says, that at the time the cattle of the plain-
tiff received the injury complained of in the declara-
tion, they were not unlawfully trespassing upon the
railroad track of the defendant ; and of this he puts
himself upon the country."

   On the sixteenth day of April, 1872, a jury was duly

elected, tried, and sworn, the truth to speak, upon the issues joined, and afterwards, on the eighteenth of April, found a verdict for the plaintiff, and assessed his damages at $500; Whereupon, the defendant, by its attorney, moved the court to grant it a new trial. On the first of May, 1872, the Court set aside the verdict of the jury by reason of defendant's said motion, and granted a new trial in the cause on payment of costs, in the order mentioned, and the Court continued the cause until the next term. On the thirteenth of November, 1872, the defendant, by leave of the court, filed its petition, bond and affidavits, and moved the Court to transfer the cause to the United States circuit court for the District of West Virginia, which motion was ordered to be docketed. The said petition, affidavits, and bond are fully disclosed by the record. On the twenty-ninth of November, 1872, the court heard the argument of counsel on said motion, and determined the bond to be sufficient, but desiring further time to consider said motion, and the matters arising thereon, continued the cause. Afterwards, on the 8th of April, 1872, the Court overruled the said motion to remove said cause so made by the defendant, and, on the next day, on motion of defendant, continued the cause until the next term. Afterwards, on the fifteenth day of October, 1873, the parties to the cause, appeared in court, and, thereupon, a jury was elected, tried, and sworn, the truth to speak upon the *issue* joined, and on the next day the jury found the following verdict, viz: We, the jury, find for the plaintiff, and assess his damages at $500. Thereupon, the defendant, by its counsel, moved the Court "for a new trial."

On the tenth day day of November, 1873, the Court overruled the motion for a new trial, and rendered judgment upon the verdict of the jury, in favor of the plaintiff, and against defendant, for the amount thereof, with interest thereon from the tenth day of November, 1873, till paid, and costs of suit. It ap-

1876.
August Term.

Baylor
v.
B. & O. R. R.

pears that defendant filed two several bills of exceptions to rulings and opinions of the court, numbered No. 1 and No. 2, which were duly signed, sealed, and made a part of the record.

By bill of exceptions No. 1, it appears that upon the trial of the cause, on the sixteenth day of October, 1873, after the evidence had been given to the jury, the defendant, by its counsel, asked the court to instruct the jury "that if, from the evidence in this case, they find that the plaintiff suffered his cattle to wander on the railroad track of the defendant, at a crossing, at a time when the passenger train was due, and that the plaintiff knew that the passenger train was accustomed to pass at the time the cattle were suffered to wander on said railroad, this constitutes negligence on the part of the plaintiff, and the railroad company cannot be held liable in damages for any injury to the plaintiff's cattle from being struck by the train under such circumstances. But the court refused to give said instructions to the jury without the following modification, viz:

"Unless the jury find, from the evidence, that such crossing was a private crossing in a lane leading from one field of the plaintiff's farm to another, constructed and used for that purpose, by the authority and consent of defendant, and that the injury to the cattle was caused by the gross negligence of the defendant, which instruction, so asked by defendant, was given to the jury with the said modification. By the same bill of exceptions, it also appears that the defendant also asked the court to further instruct the jury, as follows, viz.:

"That if the jury find, from the evidence in this case, that the cattle of the plaintiff wandered on to the railway track of the defendant, at the crossing in the declaration mentioned, in front of an approaching passenger train, when the engine was within twenty (20) feet, or thereabouts, of said crossing, and that the said passenger train could not have been checked, or stopped, so as to

have prevented the injury, in the space of twenty feet, or thereabouts, by the ordinary appliances, then the defendant is not liable for killing the plaintiff's cattle at said crossing, and the jury should find for the defendant."

But the court refused to give to the jury the said instruction without the following modification, viz.:

"Unless they further find that, after the defendant discovered that the said cattle were about to come upon the track, they might, by the exercise of proper care and prudence, have prevented the injury;" which instruction, so modified, was given to the jury. To the rulings of the court, refusing to give the instructions as asked, and giving them as modified, the defendant excepted, &c. Bill of exceptions No. 2 is, to the opinion and judgment of the Court, in overruling the defendant's motion for a new trial. This bill of exceptions contains the evidence given to the jury by the plaintiff and defendant, and not a certificate of the facts proved at the trial.

I will not recite all this evidence, as it appears in said bill of exceptions, as I deem it unnecessary, and it would extend this opinion to an unreasonable length. I shall content myself by stating, so far as I deem necessary, the substance of such of the evidence, and at such points or places, as I deem proper, to a proper understanding of the points arising which are herein adjudicated.

It is proper to remark here, that it appears, from the evidence of the plaintiff, that the railroad track passes through the plaintiff's farm, and divides it, and that the plaintiff's cattle, being from fifteen to twenty-five in number, were in a field of plaintiff on one side of the railroad, and that the spring, or water, for the cattle was on the opposite side of the railroad on the plaintiff's land, and not very far from the railroad; that the Winchester and Potomac Railroad Company paid $800 damages upon locating the road; that plaintiff had to move his barn, and that the company agreed, at that time, that

plaintiff should have a private crossing; that in the contract between the plaintiff and the Winchester and Potomac Railroad Company, when the right of way was originally granted, it was conditioned that the plaintiff was to have this private crossing for his stock to get water; that the railroad passes between the water and farm buildings of plaintiff and the bulk of the farm; that the cattle, in passing from said field to water, passed through a lane, enclosed by a stone fence, to, and across, the railroad track, at said private crossing; that at the time the plaintiff's said two cattle were killed by the defendant's engine, to wit: on the twentieth day of July, 1870, the plaintiff's said lot of cattle, consisting of from fifteen to twenty-five head, were passing from said field through said lane to, and across, said railroad, at, and upon, said private crossing, in a string, single file, to the water, and all the cattle, but the two struck and killed, had crossed the track, when said two cattle, the last two, were struck and killed, and that they were struck with such force by the engine, that they were knocked through, or over, plaintiff's stone fence into plaintiff's field—a distance of thirty yards—and killed; that there was a gate through which the cattle passed into said lane, and said gate was always left open, so the cattle could go to water; that the railroad is straight for a considerable distance, and the cattle could be seen at said crossing, and lane a distance of eight hundred·yards from the direction the train came that struck said cattle; that the said cattle were crossing said railroad about the time the train of cars was due; that the train was a passenger train; that no one was in charge of the cattle; that the train was going fast, and did not blow any whistle at the upper crossing, where it usually did; that the whistle blew near the crossing where the cattle were killed; that no whistle was blown for the crossing where the cattle were killed, and that the only whistle blown was the alarm signal; that when running at this point, the train can be brought down to a slow walk in from

fifty to one hundred yards; that on this occasion the cars were running very fast, and did not stop at all, or check in the rate of their speed.

Some of the defendant's evidence tends to prove that the engineer blew the whistle for Baylor's crossing, and after he had blown his whistle for down brakes, the brakes were applied, and when the engine was within ten or fifteen feet of the crossing, the two cattle killed attempted to run across the track in front of the engine, and in so doing were struck and knocked off the track by the engine; that the view is so obstructed at that point, that the engineer could not see the cattle; that the usual rate of speed, at that time, was from twenty-two to twenty-three miles per hour, and that the train must have been running twenty miles per hour when the two cattle were struck.

This cause has been brought before us by *supersedeas*. The defendant, in his petition for a writ of *supersedeas*, assigns, as cause for reversing the judgment of the court rendered on the verdict of the jury, the following errors, viz. :

" *First*. In allowing the withdrawal of joinder in the defendant's demurrer to the plaintiff's declaration, and sending the same to rules.

*Second*. In the order of the fourteenth of September, 1871, at a term other than the next thereafter, setting aside the dismissal of the cause at February rules, 1871, and giving plaintiff leave to amend his declaration at next rules.

*Third*. In not ordering the amended declaration to be stricken from the file, because of the way in which it was amended.

*Fourth*. In overruling the defendant's demurrer to the plaintiff's declaration.

*Fifth*. In not swearing the jury to try the *issues*, instead of swearing them only to try the *issue*.

*Sixth.* In refusing to give the instructions asked for by the defendant on the trial.

*Seventh.* In modifying the instructions, and giving them as modified.

*Eighth.* In refusing to set aside the verdict of the sixteenth of October, 1873, and grant a new trial, the subject of defendant's second bill of exceptions."

These assignments of error will be considered, one after the other, as above mentioned.

As to the first error assigned. If the court had sustained the demurrer, in whole or part, it ought to have permitted the plaintiff to amend his declaration. It is usual, when there is a demurrer to a declaration, and the demurrer is sustained, in whole or in part, to allow the plaintiff to amend his declaration, and, if he desires it, to remand the cause to rules, for that purpose. *Hart v. Baltimore and Ohio Railroad Co.,* 6 W. Va. R., 336; 1 Robinson's Old Practice, 287; 2 vol. Stephen's *Nisi Prius,* 1197.

For the promotion of substantial justice between suitors, the law of this State, and the courts in administering the law, are quite liberal, in allowing amendments.

The plaintiff's counsel often discovers, after the cause is on the docket, that his declaration mistates, or insufficiently states his case, and in such case, it is not unusual to allow the plaintiff to amend his declaration. The plaintiff may, of right, amend his declaration or bill, at any time before the appearance of the defendant, or after such appearance, if substantial justice will be promoted thereby. Code W. Va., chap. 125, sec. 12.

A defendant shall not take advantage of any variance in the writ from the declaration, unless the same be pleaded in abatement. And, in every such case, the court may permit the plaintiff to amend the writ or declaration, so as to correct the variance, upon such terms at it shall deem just. Code W. Va., chap. 125, sec. 15. If, at the trial of any action, there appear to be a variance between the evidence and allegations, or

recitals, the court may, if, in its opinion, substantial justice will be promoted thereby, allow the pleadings to be amended, and if it be made to appear that a continuance of the cause is thereby rendered necessary, such continuance shall be granted, at the costs of the party making the amendment. Code of W. Va., chap 131, sec. 8.

For these reasons, the *first* error assigned is overruled.

As to the second error assigned. I am not prepared to admit that the clerk had authority to enter the order of dismissal at February rules, 1871, but without deciding that question, which I deem immaterial, the sixtieth section of chapter one hundred and twenty-six of the Code of West Virginia, provides that the court shall have control of all proceedings in the office, during the preceding vacation. It may reinstate any cause discontinued during such vacation, set aside any of the said proceedings, or correct any mistake therein, and make such order concerning the same, as may be just. This is ample authority for the court to set aside said order of dismissal, reinstate the cause, and give the plaintiff leave to amend his declaration in the manner it did, as it now appears, by the record that the cause was reinstated, at the next regular term of the court thereafter actually held.

The second error assigned, is, therefore, not well taken, and is overruled. I am unable to perceive how, the defendant was, or could have been, prejudiced by the order complained of in the third assignment of error. And he, not being prejudiced, thereby, cannot be entertained here in complaint thereof. This assignment of error is not well taken, and is overruled.

As to the fourth assignment of error. This assignment is general. No defect in the declaration is pointed out, or specified, and our attention has not been drawn to any defect, or insufficiency. It is true, the declaration does not aver that the cattle were killed on the railroad track. But, in an action on the case, against a railroad corporation, for killing plaintiff's cattle, by carelessly,

and unskillfully, running their locomotive against them, the declaration need not aver that this was done on the defendant's railroad track. *The Housatonic Railroad Company v, Waterbury,* 23 Connecticut R., p. 101. " On a demurrer, (unless it be to plea in abatement,) the court shall not regard any defect, or imperfection, in the declaration, whether it has heretofore been deemed mispleading, or insufficient pleading, or not, unless there be omitted something so essential to the action, or defence, that judgment, according to law, and the very right of the case, cannot be given." Code West Va., chap. 125, sec. 29. I am unable to detect in the declaration, in this cause, any such defect, or insufficiency, as to authorize the court to declare the declaration, or either count thereof, bad, on demurrer. And for these reasons, the fourth assignment of error is overruled.

As to the fifth assignment of error. I am not prepared to admit, that the special plea, in writing, filed by the defendant, upon which issue was joined, as we have seen, is a good plea. I think that the weight of authority is against the plea. To declare this plea good, would be, to determine that, because the cattle were, unlawfully, trespassing upon the track of defendant's railroad, at the time they received the injury complained of, would exempt the defendant from liability to the plaintiff, for damage, no matter of what degree, or amount, of negligence, the defendant, or its servants, were guilty, in the management, and running, the train, at the time the cattle were killed, or, even, if the cattle were wantonly, wilfully, or unnecessarily, killed, by the defendant, or its servants, managing, and running, the train, or engine. This, I am not now prepared to declare judicially. But, even though the plea were good, I think the verdict of the jury is sufficiently responsive to both issues. Where there are *two* issues joined, in an action on two several pleas, and the jury is sworn to try the *issue;* but they find a verdict responsive to both issues; the misprision of charging the jury to try the *issue,* is immaterial.

1876.
August Term.

Baylor
v.
B. & O. R. R.

36

1876.
August Term.

Baylor
v.
B. & O. R. R.

*White v. Clay's ex'ors*, 7 Leigh, 68. "If there be two issues, and the jury are sworn to try the issue, it is no error." 3 Call. 19. *Walden's ex'or v. Fuqua, and others,* 2 Wash. 1–8; Matthews' Digest, 285, note 1. The verdict, in this cause, certainly serves, and is responsive to, both issues. For these reasons, the fifth assignment of error is not well taken, and is overruled.

As to the sixth assignment of error, for convenience, I will first consider the first instruction asked by the defendant. As to whether the principle declared by this instruction, is true, or not, there seems to be difference of opinion among distinguished judges and jurists. Authorities may be found in favor of the principle and against it. The private crossing at which the cattle were killed, according to the evidence, the plaintiff was entitled to use, by contract, for the passage of his cattle from his field or fields, across the railroad, to water on his land. It would seem that if the plaintiff, had, by deed, conveyed a strip of land running through his farm, so that he could not get from one portion to the other, without crossing the strip thus conveyed, the law would give him a way, of necessity. *Housatonic Railroad Co. v. Waterbury,* 23 Connecticut, R. 109. But the code of this State, provides that for every person through whose lands the railroad, or canal, of a company passes, it shall provide wagon ways across the road, or canal, from one part of said land to the other, and keep such ways in good repair. Code of West Va., chap. 52, sec. 9. Code of Va. p. 327, sec. 22. The common law imposes on the owner of domestic animals the duty of keeping them on his own lands, or within inclosures, and he becomes a wrong doer if any of them escape or stray off upon the lands of another. Indiana R. by Porter, 6 vol. p. 145. *The Lafayette and Indianapolis Railroad Company v. Shriner.* 3 Blackstone Com. 209, 211. *Wells v. Howell,* 19 Johns. R. 285, "The obligations of adjoining owners of land, to which recurrence is here necessary, are determined by ancient principles of common law. By these,

1876.
August Term.

Baylor
v.
B. & O. R. R.

every man must keep his cattle on his own close, and prevent their escape therefrom. If they go upon the land of another without his permission, the owner is liable to trespass. Pierce American Railroad Law, p. 320. *Rust v. Low et al.*, 6 Mass. R. 94. *Little v. Lathrop*, 5 Greenleaf (Maine) 359. *Tonawanda Railroad Co. v. Munger*, 5 Denio (N. Y.) 259. It seems that in Indiana, the said common law rule, is in force, but even there, it was held that "though the cow, when the injury occurred, may have been wrongfully on the track, if the damage resulted from gross negligence, or wilful misconduct, on the part of the company's agents, in running the train, such being the proximate cause of the injury, the defendant would be liable." The *L. & I. Railroad Company v. Shriner*, 6. Porter (Indiana) R. 141. Is the common law rule, applicable to owners of cattle, before stated, in force in West Virginia? Much of our statute law, we derived from the State of Virginia. The common law in force within the boundaries of this State, as well as the statute law of Virginia, in force within the same boundaries, at the adoption of the first constitution of this State, were by the constitution continued in force until altered and repealed, and if the common law in relation to trespasses committed by horses, cattle, &c., was in force within the boundaries of this State at the adoption of her first constitution, it is still in force, as no change in this respect has since been made by the present constitution, or laws, enacted since, of which I am now aware. If the common law in this respect was not in force when West Virginia adopted her first constitution, it has not been since, and is not now. As having a material bearing on this question, it is material to enquire whether the common law was in force in Virginia at the adoption of the first constitution of this State. And to determine this question satisfactorily, it is necessary to examine, with some care, the legislation of Virginia touching the subject, before the formation of this State, and the legislation of this State, since it became a

separate State of the Union. At a session of the Grand Assembly of Virginia, held in 1631, an act was passed, in these words: "Every man shall enclose his grounds with sufficient fences, upon their own peril." 1 Hen. Stat. at large, act 63, p. 176. Again, in 1632. "Every man shall enclose his ground with sufficient fences, or else plant upon their own peril." *Ib.*, Act 52, p. 199. In March, 1657, an act was passed, declaring, "what fences shall be sufficient." It enacts, "Be it also enacted, and confirmed, by this present Grand Assembly, That *everie* planter shall make a sufficient fence about his *cleened* ground, at the least, four foot and a half high, which, if he shall be deficient in, what trespass, or damage, soever, he shall receive, or sustain, by horses, mares, hogs, goates, or cattell, shall be his owne loss, or detriment. And, also, if it shall happen that any person shall hunt anie of the said horses, mares, hoggs, goates, or cattel that shall so offend, and doe them harm, he shall make satisfaction for any of them that shall be so hurt, to the owners of them, to be recovered within any court of justice within the collonie." 1 Hen. Stat. at Large, act 54, p. 458. In March, 1661–2, an act was passed very similar to that just quoted, requiring fences to be four and a half feet high, otherwise, the owner of the land to have no redress for trespasses, and be liable to the owner of the beasts for injuring them; and for killing them, to pay double the value, and, also, providing that, if the fence be sufficient, the owner of the land to have satisfaction for the trespass?" &c. 2 Hen. Stat. at Large, p. 100, act. 77. See, also, *Ib.* Act of Oct., 1670, act. 2, p. 279. Also, 3 *Ib.* chap. 15, p. 279, passed 1705. See, also, act for preventing trespasses, passed twenty-sixth of December, 1792, Revised Code of 1792, p. 386. This last act is substantially the same as the said act of 1657. On the sixth of February, 1819, the General Assembly of Virginia passed an act, entitled, "An act to reduce into one, the several acts for preventing trespasses; declaring what shall be deemed a lawful inclosure," etc.

See second volume of Revised Code of 1819, pp. 306, 307. This act is substantially the same as the said act of 1792. See Code of Va., p. 492, sec. 1, etc. The statute law of Virginia, upon this subject, in force within the boundaries of this State, at the time the State became a separate State in the Union, was continued in force, so far as I am advised, until the first day of April, 1869, when the code of this State took effect. Chapter 60, first and third sections thereof, is, in substance, the same as in the code of Virginia of 1860. See, also, sections 4, 5, 6, 7, 8, 9, 11, of chapter 60, Code of West Virginia. See, also, chapter 62, *Ib.*

1876.<br>August Term.<br><br>Baylor<br>v.<br>B. & O. R. R.

On examination of the statutes of Virginia and West Virginia, above referred to, I am of opinion that the said common law rule, requiring the owners of cattle to keep them upon their own lands, on pain of becoming liable in trespass for their entry upon the lands of owners, was not in force within the boundaries of this State when she became a separate State, except those which are unruly and dangerous, and that if it was ever in force in Virginia, it was repealed at an early day in her history. I am not aware of any case in which it has ever been held in Virginia or West Virginia, that the owner of cattle who suffered his cattle to run at large from his own lands upon the unfenced lands of others, was liable as a trespasser, to damages to other land owners upon whose lands his cattle strolled when they were not unruly or dangerous; nor indeed in any case, except the land entered, was inclosed by a lawful fence. At this late day, from a third to a half of the territory of this State, is forest, unenclosed by any fence, and unsettled; and these forests are now, and have for a long time been no inconsiderable source of income to many of the people of the State—they produce grass and other vegetables upon which thousands of cattle, hogs, and sheep, feed and are fattened for market in the summer and fall seasons of each year. In some of the densely populated counties of the State, perhaps this common law rule might be ap-

plied with profit, at least without public detriment. But in many of the counties of the State, where the population is sparce, and the forest lands extensive, the application and enforcement of the rule, would probably be a public detriment, if not, a public calamity. If the common law rule is desired, as a general law of the State, in whole, or part, the remedy is ample with the legislature, and not with the judiciary. But it is argued that there is no law in force within the State, which requires railroad corporations to fence their railroads. This is true; but it is equally true as regards each citizen of the State who owns lands. If the citizen land owner desires to exclude the cattle of others from entering upon his lands, or any part of it, he incloses it with a lawful fence, and then if the cattle of others enter his land, so enclosed, he has his remedy in damages against their owner. And if railroad companies desire to protect their roads and trains from the intrusions of cattle suffered to run at large, so far as fencing will do so, they can fence the same. I am not aware of any way it can be approximated under existing laws, except by inclosing their roads with proper fencing. Although a railroad company has the right to the free and unobstructed use of its track, and the paramount duty of its employees, is the protection of the train and the passengers, and property therein; yet such employees are bound to use ordinary care and diligence, so as not unnecessarily to injure the property of others. *Cincinnati and Zanesville Railroad Company v. Smith*, 22 Ohio State Reports 227, 10 American reports 729. It being the duty of the servants of the company, so far as consistent with their other and paramount duties, to use ordinary care to avoid injuring cattle on the track, they are of course bound to adopt the ordinary precautions to discover danger, as well as to avoid its consequences, after it becomes known. *Ib.* 731. If the servants of the defendant in charge of the train, having due regard to their duties for the safety of the persons and property in their charge,

1876.
August Term.

Baylor
v.
B. & O. R. R.

could, by the exercise of ordinary care, have seen and saved the cattle, I think they were bound to do so, particularly so under the circumstances, in this case, as they were killed at said private crossing for plaintiff's cattle. *Ib.* 713; *Louisville and Nashville R. R. Co. v. Wainscott*, 3 Bush, 149. "The owner of cattle who does not keep them within his own enclosure, when he might do so by proper care, cannot require of a railway company to regulate the management and speed of their trains with reference to cattle coming upon their track. Such companies, like all others, have a right to regulate the management and conduct of their business, solely with reference to the security of persons and property in their charge, and the meeting of their reasonable appointments in regard to them; and may make their plans, upon the reasonable and legal presumption that other persons will perform all their legal obligations towards them; and consequently, that the owners of domestic animals will keep them at home, where, alone, they belong, and not suffer them to stray upon the track of a railway company, unless they are prepared to incur the legitimate hazards of such an exposure. But when a railway company finds cattle upon its track, it is bound to avoid damage to them, if practicable, by the same degree of effort that a prudent owner of cattle would be expected to do, properly considering the hazard both to the train and the cattle. And the proper inquiry is, whether the agents of the company exercised reasonable and proper care in running their engine, to avoid injury to the cattle of the plaintiff. *Central Ohio Railway Company v. Lawrence*, 13 Ohio, R. N. S. 66. See also opinion of Judge Moncure in the case of *Trout v. Virginia and Tennessee R. R. Co.;* 23 Gratt. 619, and cases there cited. *Kerwhaker v. The Cleveland, Columbus and Cincinnati Railroad Company*, 3d Ohio State Reports 172; *Cleveland, Columbus and Cincinnati Railroad Company v. Levi T. Elliot*, 4 Ohio State Reports 474, 476, 477.

In this opinion of Judge Moncure, in which the whole court concurred, at page 649, he says : "But the cases just cited from the Pennsylvania, Vermont and Ohio reports, were all cases in which the animals destroyed were, at the time, going at large by the neglect of the owner. If, in such cases, the agents of the railroad company are bound to exercise reasonable and proper care in running their engine, to avoid injury to animals on the track, *a fortiori*, are they bound in such case as the one now under consideration, in which the plaintiff was guilty of no neglect in regard to his horses getting on the railroad," &c. Because of the principles adjudicated and stated hereinbefore, it seems to me that the circuit court did not err in refusing to give said first instruction asked, to the jury, as it was asked. Nor do I think the court erred, to the prejudice of the defendant, in giving said instruction, with the modification aforesaid. The instruction, as given, I think, if erroneous, was to the prejudice of the plaintiff, and not of the defendant. But I do not think said instruction is correct, or states the law correctly, for the reasons hereinbefore given ; but in so far as it is erroneous, the error is to the prejudice of the plaintiff, and not the defendant, and he could not have been injured thereby, and cannot complain thereof here.

The second instruction asked by defendant, is so framed that it might evidently have confused and misled the jury without the modification added by the court, and I, therefore, do not think the court erred in refusing to give said last named instruction, without the modification, or that the court erred, to the prejudice of the defendant, in giving said instruction with the modification.

As to the eighth error assigned : In considering this assignment of error, I deem it unnecessary to state the evidence of the numerous witnesses examined before the jury by plaintiff and defendant. There is a manifest and material conflict between the evidence of the witnesses

of the plaintiff, which tend to fix a legal liability upon the defendant, and the evidence of the witnesses of the defendant, which tend to prove to the contrary. This conflict is as to material facts. Hence, I suppose, the court has certified the evidence of the witnesses, as given at the trial, instead of the facts proven. It is well established that, where the court certifies the evidence of the witnesses as given at the trial, instead of the facts proved, the Appellate Court, in considering whether the court below erred in overruling the motion for a new trial, will exclude from its consideration all the evidence of witnesses for the party against whom the verdict of the jury was rendered, which is in conflict with the evidence of the witnesses of the opposite party, as to any, and every, material fact in the cause. In other words, the Appellate Court will consider the question upon the same principles, and subject to the same rules, as if the party who moved the court to grant a new trial, had demurred to the evidence given to the jury. Under this view, the only question for this Court to determine is, is the evidence given to the jury, by the plaintiff, sufficient to authorize the jury to find the verdict? And, in considering this question, the Court will consider, not only the facts proved by the plaintiff's evidence, taking it as true, but will draw all such reasonable inferences from the facts proven as the jury might have drawn. And this Court, proceeding to consider the question, governed by these well established rules and principles, will not reverse the judgment of the court below, for refusing to grant a new trial, unless it clearly and plainly appears that the verdict of the jury is contrary to the law and evidence. It seems to me that, while the evidence of the plaintiff does not make out what might be termed a strong case in his favor, and against the defendant, in support of the verdict, still it seems to me, that as the evidence is sufficient under the rules, I am compelled to consider it to support the verdict; and this Court is not authorized to

37

1870.
August Term.

Baylor
v.
B. & O. R. R.

declare that the circuit court erred in refusing the new trial granted.

For these reasons, the judgment of the circuit court must be affirmed, and the defendant in error recover against the plaintiff in error his costs and damages, according to law.

Edmiston and Moore, Judges, concurred.

Green, Judge, absent.

JUDGMENT AFFIRMED.