# CHARLESTON.

## DOWNEY v. C. & O. RAILWAY CO.

Submitted September 13, 1886.--Decided November 6, 1886.

1. The general rule is, that in an action for negligence the plaintiff can not succeed, if it is found by the jury that he has himself been guilty of negligence or want of ordinary care, which contributed to cause the injury. But this rule is subject to this important qualification: Though the plaintiff may have been guilty of negligence, and although that negligence may in fact have contributed to the injury, yet if the defendant could by the exercise of ordinary care and diligence have avoided the injury, the plaintiff's negligence will not excuse or relieve the defendant from liability. (p. 737.)

2. In a case involving the doctrine of contributory negligence the court should not instruct the jury, that the negligence of defendant's servants in charge of its railway train is the negligence of the defendant, *for which it is responsible.* (p. 738.)

3. In such case, if the fault or negligence of the plaintiff was the proximate cause of the injury, the defendant is not responsible, although it may have been negligent and the remote cause of the injury. (p. 738.)

4. If the passenger would hold the railroad company to the full measure of its responsibility for safe carriage, he must conform to all the reasonable rules the company makes looking to the safety of its passengers. (p. 739.)

5. If the passenger rides, where he has no right to ride by the rules of the company, or in a place of great danger—as on the top of the car or cow-catcher or pilot of the engine—where no man

of ordinary prudence would attempt to ride, the mere knowledge or consent of the conductor or trainmen to his riding there will not entitle the plaintiff to any greater rights against the company on account of any injury received by him while so riding, than if the conductor and trainmen had been wholly ignorant that he was so riding.   (p. 740.)

6. Where a railroad company is in the habit of carrying its shopmen to and from their work as a matter of accommodation and without any agreement or compensation therefor, if its train is so crowded, that one of said shopmen can not get a seat in the cars, that fact will not justify him in sitting on the pilot of the engine ; and if he does improperly do so, it is his duty to leave the pilot and go into the cars at his first opportunity.   (p. 742.)

7. Where the evidence does not tend to prove, that the injury complained of was caused by the wilful, wanton or oppressive conduct of the agents of a railway company, and that such conduct was expressly or impleidly authorized or ratified by the company, it is error to refuse to instruct the jury, that in such case they can not give punitive or exemplary damages.   (p. 743.)

*E. Gibson* and *T. J. Michie* for plaintiff in error.

*J. H. Ferguson* for defendant in error.

SNYDER, JUDGE :

Action brought December 24, 1880, in the circuit court of Cabell county by John W. Downey against the Chesapeake and Ohio Railway Company to recover damages for injuries received by the plaintiff through the alleged negligence of the defendant.   On June 24, 1881, there was a verdict in favor of the plaintiff for $5,000.00, on which the court entered judgment.   The defendant demurred to each count of the declaration, which demurrer the court overruled.   After the evidence had been introduced, the plaintiff submitted three instructions to each of which the defendant objected, but the court overruled the objection, and the instructions were given to the jury.   The defendant then asked twenty-two instructions, numbered from one to twenty-two inclusive, to each of which the plaintiff objected.   The court overruled the objection to Nos. 1, 2, 4, 6, 10, 11 and 12, and permitted these to go to the jury, but sustained the objection to all the others and excluded them from the jury.   After

the verdict had been returned, the defendant moved the court to set the same aside, which motion the court over-ruled. To each and all of said rulings the defendant duly excepted. In order to have said rulings reviewed by this Court, the defendant obtained this writ of error.

The declaration contains two counts, the first of which alleges, that the plaintiff was one of a number of skilled laborers in the service and employment of the defendant at its machine-shops and round-house in the city of Huntington, and upon its engines and carriages, for hire and reward; that the defendant had agreed, in consideration of such employment, to carry and convey said laborers by proper engines and carriages to and from its depot in said city to and from its machine-shops and round-house without additional or other reward or compensation; and that while the plaintiff was being conveyed under said agreement he was injured by the mere negligence and misconduct of the defendant and in violation of said agreement. The second count alleges that, at the time of the injury, the plaintiff was being carried as a passenger by the defendant upon its railway, and the injury was caused by the negligence and default of the defendant without any fault or negligence on his part.

I have carefully examined the declaration and think the demurrer thereto was rightly overruled

The plaintiff on the trial offered evidence tending to prove the following facts: The plaintiff was twenty-five years of age and was, at the time the injury occurred, employed by the defendant as an apprentice blacksmith and was working at the machine-shops of the defendant at Huntington, and had been so working for eight years. His wages were from $1.00 to $1.35 per day. On August 29, 1880, he was on engine No. 29, sitting on the pilot or cow-catcher, with his legs hanging down in front. The train was made up of the engine and tender, one combination car and one box car without seats. The combination car would seat about thirty persons. The engine was in the rear of the cars next to the box car, with which it was connected by a draw-bar. In this condition the cars were being pushed over the road by the engine. On the morning of the accident, this train left the depot

shortly after six o'clock with about eighty employes of the defendant upon it to be conveyed to the shops. There were not enough seats for all; some went into the cars, some on top, some on the engine and tender, and the plaintiff and one Dixon got on the pilot. The engineer could see plaintiff sitting on the pilot, and did not tell him to get off. Plaintiff had ridden on trains about all the time he had been in the employ of the defendant. The cars furnished for the hands to go to and from the shops were sometimes a flat, sometimes coal-jimmies, box car and passenger car. Men would get on wherever they could and as they could. The track was bad on the line between the depot and shops; there were five switches and the distance was about three miles. The injury occurred at the "Y." The train was running about eighteen or twenty miles per hour—was going southeast and was struck in front by engine No. 23 going southwest. It was quite foggy. The engineer of No. 29 could not see over the cars in the direction he was running. The train attached to and running in front of engine No. 29 was run into by engine No. 23 at the "Y." In the collision the plaintiff's arm was caught between the draw-bar of the car and smokestack bar-brace on right side of brace; he was between the flagstaff and smokestack brace; his left arm caught in brace and right arm was hold of flagstaff; and his feet hanging over cow-catcher; his arm was mashed near the shoulder so that it had to be amputated above the elbow. He was sick for forty-eight days, from August 9, 1880; his health was good before the injury and not very good since. Before going upon the train that morning plaintiff went to the combination-car, looked in the door and saw no vacant seats; all the seats were occupied so far as he saw; he then came back, met Dixon and they got on the pilot; Dixon got off the pilot before the accident; the train first stopped at coal tipple where eight or ten men got off, next at oil shed, and again at engine works; men got off from different parts of the train at all these places; plaintiff might have gotten off at any of these places if he had hurried, but he preferred to remain where he was to running the risk of going to the car. He never saw or heard any orders of the company as to riding on car or engine.

On the other hand, the defendant introduced evidence tending to prove the following facts :   The plaintiff while sitting on the pilot was told by Dixon to get off of it, that it was a dangerous place, but plaintiff refused to do so and Dixon then got off and left him there.   The plaintiff knew the rules of the defendant, and that they prohibited any of the shop-hands from riding on the engine; a printed notice of these rules being posted up in engine No. 23 ; it had no contract to carry the plaintiff or other shop-hands to and from their work, but did so gratuitously when it chose to do so at all; the pilot of the engine is a very dangerous place for any one to be and its rules forbid any one to occupy it; there was no necessity for the plaintiff to ride on the pilot; there was plenty of standing room in the cars where the plaintiff could have safely ridden ; no one except the plaintiff and one Mathews was seriously injured by the collision, and Mathews, at the time, was riding on top of the freight car ; the train was not at the time running up to the speed allowed by the schedule, but only about ten miles per hour; there were vacant seats in the train at the time the plaintiff was hurt, and he had ample time during the times when the train stopped to let men get off to have gotten off the pilot and gone into the car; and no one was hurt in any of the cars by the collision.

The plaintiff's instructions given to the jury by the court were as follows :

" No. 1.   If the jury believe from the evidence that the conduct of the defendant was wanton or wilful, or showed that degree of indifference to the right of others that it may justly be characterized as recklessness, and had been the cause of the injury, then the court instructs the jury that the doctrine of contributory negligence shall not be considered by them.

No. 2.   Court instructs the jury that the negligence of the defendant's servants who are employed to run train in runing the same, is the negligence of the defendant, for which it is responsible.

No. 3.   The Court instructs the jury that the doctrine of negligence of co-servants does not apply in this case."

Instruction No. 1 is doubtless correct as an abstract legal proposition ; but the evidence in this case furnishes no basis for such an instruction.   If the evidence had tended to prove

that, after the defendant, or its agents, had discovered that the negligence of the plaintiff had placed him in such a position as must necessarily result in an injury to him, and that by proper care the defendant could have avoided injuring him, but heedlessly failed and neglected to do so, then such an instruction would have been proper. The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or recklessly injuring him. In such case it may be said, that the negligence of the party injured, in putting himself in a position of danger, was merely the condition or remote cause of the injury, while the subsequently intervening negligence of the other party was the immediate or proximate cause. *Washington* v. *B. & O. R. R. Co.*, 17 W. Va. 190; *B. & O. R. R. Co.* v. *State*, 33 Md. 542, 554. Even the criminal is not out of the protection of the law, and is not to be struck down with impunity by other persons. Cooley on Torts 674. This is not a substantive legal proposition, but simply a qualification of the general rule which affirms, that in an action for negligence the plaintiff can not succeed if it is found by the jury that he has himself been guilty of any negligence or want of ordinary care which contributes to cause the injury. The qualification is, that though the plaintiff may have been guilty of negligence, and although that negligence may, in fact, have contributed to the injury, yet if the defendant could in the result, by the exercise of ordinary care and diligence, have avoided the injury, the plaintiff's negligence will not excuse or relieve him from liability. It is not sufficient that the defendant sees or knows the plaintiff has negligently placed himself in a position of danger, which may possibly result in his injury, but the situation must appear to be such that, unless the defendant uses extraordinary care and efforts to avoid it, injury must, according to the ordinary course of events, result to the plaintiff. *Baylor* v. *B. & O. R. R. Co.*, 9 W. Va. 270. If in such case it is within the power of the defendant, by the highest degree of caution and diligence, to avoid the injury without doing greater injury to others, and he wantonly or recklessly fails to do so, and his failure to do so under such circumstances will always be regarded as wanton and reckless, he will be considered the proximate cause of the injury

and held responsible therefor, notwithstanding the negligence of the plaintiff may have been the remote cause of and contributed to his injury. But if the negligence of the plaintiff is merely such as makes it possible or remotely probable that injury may result to him, and the defendant has no reason to believe such injury will in the ordinary course of events result, the defendant is not bound to use any *extraordinary* caution or diligence to avoid it, and if he fails to do so his conduct will not be regarded as wanton or wilful or excuse the negligence of the plaintiff. Beach on Contrib. Neg. § 13, p. 40.

The evidence in the case at bar does not tend to prove that the defendant or its agents had any reason to anticipate the collision which caused the injury to the defendant. It is true the defendant may have known that the plaintiff was on the engine-pilot, and that that was a dangerous position, but it also knew that no injury would probably result to him there unless there was a collision, or some other accident occurred, which it had no reason to anticipate. The conduct of the defendant in running its train with ordinary caution under such circumstances was neither wanton nor reckless. Whether or not the collision was the result of negligence on the part of the defendant is not involved in this question. Our only inquiry here is, was the conduct of the defendant in running its train, when it knew the plaintiff had negligently placed himself upon the pilot of its engine, wanton and reckless. I do not think it was, and therefore said instruction No. 1 was improper in this case.

For the same reasons and upon the same principles of law, I think said instruction No. 2 was erroneous when applied to the evidence in this case. It is generally true, that the company is responsible for the negligence or misconduct of the agents who run its trains, but the responsibility of the company for the acts of its agents is no greater than it is for the same acts done by itself. If the negligence or fault of the plaintiff was the proximate cause of the injury, then neither the defendant nor its agents were responsible, although it or they may have been negligent and the remote cause of the injury. *Railroad Co.* v. *Jones*, 95 U. S. 439; *Madden* v. *Railway Co., supra*, p. 610.

I observe no objection to instruction No. 3, and think it was properly given to the jury.

Of course the plaintiff in error can not complain of the instructions given to the jury at its own request, consequently these need not be considered. Of the defendant's instructions which were rejected by the court, I am clearly of opinion that those numbered 3, 5, 13, 16, 17, 18, 19, 20, and 21, were rightly rejected by the court. None of these instructions state the law according to the principles announced and the law as declared by the former decisions of this Court. *Cooper* v. *Railroad Co.*, 24 W. Va. 37; *Riley* v. *Railway Co.*, 27 W. Va. 145; *Madden* v. *Railway Co.*, *supra*, p 610.

The defendant's instruction, No. 7, is as follows:

"No. 7. The court instructs the jury, that if by the rules and regulations of defendant in force at the time of the injury complained of in this case, the engineers in charge of its engines were prohibited from permitting plaintiff to ride on the pilot of its engines, and the plaintiff at the time had knowledge of the defendant's rules on that subject, then the mere knowledge of the engineer in charge of the engine on which plaintiff was riding when injured, that plaintiff was riding on the pilot of said engine, does not entitle plaintiff to any greater rights against defendant in this case than he could have if defendant's engineer had been wholly ignorant of the fact that plaintiff was riding on the pilot of said engine."

Instruction, No. 8, is the same as No. 7, except the words, "to ride on its engines," are substituted for the words, "to ride on the *pilot* of its engines," and the words, "consent of the engineer," for the words, "the mere knowledge of the engineer." And instruction No. 9, is the same as No. 8, except that it wholly omits the words, "the plaintiff at the time had knowledge of the defendant's rules on that subject."

If the plaintiff would hold the railway company to the full measure of its responsibility for safe carriage, he must conform to all the reasonable rules the company makes, looking to the passenger's safety and convenience, and if he violates such rules and regulations by riding where he has no right to ride, it is no very harsh rule that requires him to do it at

his proper peril.   It has, however, been held that when the conductor or train-men consent or encourage the passenger to ride in the baggage-car, and especially when they direct him to do so, that then the passenger is not guilty of negligence of such kind as to prevent his recovery, if he sustains injuries while riding there.    *Carroll* v. *New York, &c., R. R. Co.*, 1 Duer 571 ; *Dunn* v. *Grand Trunk Railway Co.*, 58 Me. 187 ; *Pool* v. *Chicago, &c., R. R. Co.*, 53 Wis. 657.   If there is any sound basis for such a qualification of the rule, it is difficult to see how it can be extended beyond cases in which the conductor or train-men encourage or direct the passenger to ride where the rules forbid him to ride.   The mere knowledge of the engineer or other train-men that the passenger is so riding, or even the consent of the engineer, could not and ought not to relieve the passenger from responsibility for his violation of the reasonable rules of the company, and transfer the responsibility to the company.    *Robertson* v. *New York, &c., R. R. Co.*, 22 Barb. 91 ; *B. & O. R. R. Co.* v. *Sherman*, 3 Gratt. 602, 628 ; *B. & O. R. R. Co.* v. *Whittington*, 3 Gratt. 805.

In *Pennsylvania R. R. Co.* v. *Langdon*, 92 Pa. St. 21, it was held.   " Where the rule of a company is intended for the safety of the passengers, the company will be relieved from responsibility if it be shown that an injury was received in consequence of a violation of the rule, and this notwithstanding the fact the negligence of the company's servant was the cause of the accident ;" and also that, "A conductor of a railroad train can not, in violation of a known rule of the company, license a man to occupy a place of danger so as to make the company responsible."   In this case the action was by a passenger for an injury received by him while riding in the baggage-car contrary to the rules of the company.   Paxson, Justice, in delivering the opinion of the court, says :   "If the passenger thus recklessly exposing his life to possible accidents were a sane man, more especially if he were a railroad man, it is difficult to see how the knowledge or even the consent of the conductor to his occupying such position could affect the case.   There can be no license to commit suicide. It is true the conductor has the control of the train and may assign passengers to their seats.   But he may not

assign a passenger to a seat on a cow-catcher, a position on the platform, or in the baggage-car. This is known to every intelligent man and appears upon the face of the rule itself. He is expressly required to enforce it, and to prohibit any of the acts referred to, unless it be riding on the cow-catcher, which is so manifestly dangerous and improper, that it has not been deemed necessary to prohibit it. We are unable to see how a conductor, in violation of a known rule of the company can license a man to occupy a place of danger so as to make the company responsible. It is otherwise as to rules which are introduced merely for the convenience of the company or its passengers." 92 Pa. St. 28; *Sullivan* v. *Railroad Company*, 6 Casey 234; *O'Donnell* v. *Allegheny, &c. R. R. Co.*, 9 P. F. Smith 239.

This it seems to me is sound reasoning. How can an employe authorize a passenger to violate, not only the express rules of the company, but also the rules that every prudent man establishes for himself for his own protection, to the extent of rendering the company liable when injury results from such violations? Beach on Contr. Neg. § 55, p. 161.

This reasoning applies with equal cogency to passengers riding in any other exposed or unlawful position upon a railway train, and with greater force in proportion as the risk increases. If it is negligent to ride in a baggage-car, it is more negligent to ride upon the locomotive, and gross negligence to ride on the pilot or cow-catcher of the locomotive, even with the consent of the trainmen. Beach on Contr. Neg. § 55, p. 163. It must be presumed that a man of ordinary sense and reason, and particularly a railroad employe, knows that it is improper to ride upon the cow-catcher of an engine, especially when, as in the case before us, the engine is in the rear and pushing the train. In such case it is immaterial, whether the person riding on the cow-catcher knows that the rules of the company prohibited his riding there or not, because his common sense was sufficient to inform him that so riding was improper and contrary to the first law of nature, self-preservation. I am therefore of opinion that the circuit court should have given to the jury each of said instructions Nos. 7, 8 and 9, and that it erred in rejecting them or either of them.

The defendant's instructions, Nos. 14 and 15 are as follows:

" No. 14. Although the cars attached to the train on which plaintiff was injured were so crowded on the morning of August 9, 1880, that plaintiff could not find a seat therein, that fact did not justify him, in order to reach his employment, in getting on the engine of that train in a dangerous or perilous position.

"No. 15. Although the cars attached to the train on which plaintiff was injured were so crowded on the morning of August 9, 1880, when plaintiff went to the train to ride to his employment that plaintiff could not get a seat therein, and by reason thereof plaintiff went to the pilot of the engine to ride up thereon, yet before the accident in which plaintiff was injured so many persons vacated the said cars that the plaintiff could have found a seat in said cars, and these facts were known to plaintiff before the accident and when the train had come to a full stop so that plaintiff could have gone from the pilot to the cars, and the pilot was a dangerous or perilous place for plaintiff to occupy, then it was his duty to leave such pilot and go to said cars."

According to the evidence of both the plaintiff and defendant the defendant was under no obligation either express or implied to carry the plaintiff to his work. The testimony amounts to simply, that the company was in the habit of carrying the shop-hands, without any agreement to do so, when it chose and without any compensation, and that it did not always do so, It was therefore wholly optional with the company whether it would carry the plaintiff or not; and it was likewise optional with the plaintiff whether or not he rode on the defendant's cars. If he did so, his act was entirely voluntary and for his own convenience. If the company did not furnish him a safe means for his transportation, he should not have accepted or voluntarily assumed one that was extremely dangerous. And having voluntarily assumed a dangerous means of transportation or position on the train, it was clearly his duty to leave it at the first opportunity offered him. It seems to me; therefore that said instructions, Nos. 14 and 15, should have been given to the jury, and the trial-court erred in refusing to give them.

The defendant's instruction, No. 22, is in these words:

"The court instructs the jury that this is not a case in which they can give pnuitive or exemplary damages."

Where the wrong has been done under circumstances indicating wantonness, violence and oppression upon the part of the wrong-doer, exemplary damages are recoverable. *Frey* v. *Swartwout*, 10 Pet. 81; *P. R. R.* v. *Brooks*, 57 Pa. St. 339; but such damages are not recoverable against a railroad company unless the injury is the result of the authorized or ratified misconduct of its servants. *M. & St. P. R'y* v. *Arms*, 91 U. S. 489; *Goddard* v. *G. T. R'y*, 59 Me. 202; *S. R. R. W.* v. *Kendrick*, 40 Miss. 374; *Ogg* v. *Murdock*, 25 W. Va. 139.

There are some cases which hold that when a person is injured by gross negligence on the part of the railway company, he may recover exemplary damages. *Hopkins* v. *A. & St. L. R. R. Co.*, 36 N. H. 9; *L. & N. R. R. Co.* v. *McCoy*, 81 Ky. 403; but the better and more reasonable doctrine seems to be, that the railway company is not to be held liable in exemplary damages for injuries caused by the negligence of its servants, unless it be shown that the servant's act was willful, and was either authorized or ratified by the company, but such authorization or ratification can be evidenced either by an express order to do the act, or an express approval of its commission, or by an antecedent retention of a servant of known incompetency, or by a subsequent retention or promotion of the negligent servant. Patterson on Railway Accident Law, § 392 p. 471; *Clyhoon* v. *N. Y., &c., R. R. Co.*, 56 N. Y. 44; *Hagan* v. *P. & W. R. R.*, 3 R. I. 88.

According to the evidence in the case before us, there was no wilful misconduct or wanton negligence on the part of the defendant's servants, nor was there anything to show any approval or ratification by the company of the act causing the injury. It seems to me, therefore, that said instruction, No. 22, was proper under the evidence offered in this case, and that it was erroneously rejected.

For the reasons herein pointed out, I am of opinion, that the judgment of the circuit court should be reversed the verdict of the jury be set aside, and the case remanded for a new trial.

REVERSED.    REMANDED.