# WHEELING.

## COOPER v. P. C. & ST. L. R. Co.

Submitted June 7, 1883—Decided April 19, 1884.

1. It is the duty of a railroad company not only to furnish reasonably well constructed and safe machinery and appliances for its cars for the use of its employes engaged in operating its

road, but also to exercise continued supervision over the same to keep them in good and safe repair. (p. 58.)

2. A railroad company cannot divest itself of this duty, so as to relieve itself from responsibility for the non-performance thereof, by delegating the duty to any of its servants in any of its departments; and if it does delegate this duty to any of its servants and vest him with controlling or superior authority in regard thereto,—the *negligence of such servant* is the negligence of the company. (p. 58.)

3. If such company or its servant, to whom it has delegated the performance of this duty, suffer such machinery, cars or appliances either from long continued use or any other cause to become unsound, unsafe or defective, and this unsoundness and defective condition are known to the company, or by the exercise of due care and diligence on its part they might have become known to it, and injury therefrom results to one of its employes without any fault of his, while in the performance of his duty,—the company is responsible to such servant so injured. (p. 59.)

4. It is the duty of such railroad company to guard its employes from injuries resulting from unsound, unsafe and defective engines, cars and appliances by having the same continuously inspected by persons competent to perform that duty; and the negligence of such inspector in the discharge of this duty is the negligence of the company. (p. 59.)

5. A brakeman employed on one of the freight trains of a railroad company and such inspector or the master mechanic charged with the duty of keeping such machinery, cars and appliances in repair cannot be regarded as fellow servants in such a sense, as to prevent the brakeman from recovering of the company for an injury sustained by him because of the negligence of such inspector or master mechanic. (p. 59 )

6. If a brakeman in the employ of a railroad company while in the performance of his duty and without any fault on his part is injured by the breaking loose or giving way of a hand-hold or any other appliance attached to its car and used to assist such brakeman in the performance of his duty, and such defect was one that could have been discovered by a careful inspection of the car by a competent inspector and repaired, such railroad company is liable to such brakeman for the injury sustained by him, although the proximate cause of the injury was a result of the negligence of the inspector or the master mechanic respectively charged with the duty of respectively inspecting and keeping such hand-hold in repair. (p. 59.)

WOODS, JUDGE, furnishes the following statement of the case:

This was an action of trespass on the case, brought by James W. Cooper, as the administrator of William Patton deceased, against the Pittsburgh Cincinnati and St. Louis Railway Company, to recover damages for the negligence of the defendant whereby the said Patton lost his life. The declaration alleges that the defendant was a corporation operating a line of railroad in the county of Brooke in this State, and also a line of railroad through the State of Ohio, connecting with said line of railroad through said county of Brooke; that the defendant was the owner of a certain train of freight cars, and a locomotive thereto attached employed in carrying freight over said lines of road for hire; that the said William Patton on the 17th of June, 1879, was in the employ of the defendant as a brakeman on said train of freight cars, hired to serve the defendant on said train as a brakeman on a trip and run of said train from the town of Dennison in the State of Ohio to the station on the line of railroad in the county of Brooke, known as Collier's Station; that it then and there became and was the duty of the defendant to use due care, that the said freight cars and each of them, and every part, parcel, attachment and appliance thereof, used or to be used by the said Patton in and about his work and employment as brakeman on said train, should be good, strong, safe, sound, and sufficient, so that Patton might use, operate, work, and manipulate the same and every part thereof, in and about his employment as such brakeman without danger, risk, hurt or injury to him; that the defendant did not use due and proper care that the said freight cars and every of them and every part, parcel, attachment and appliance of said cars used or to be used by said Patton about his labor as such brakeman should be good, strong, &c., so that he might use the same so far as it might be necessary for him to use the same in and about the proper performance of his duty as such brakeman without danger, &c., but wholly neglected to do so and negligently permitted and suffered one of said freight cars designated as number "4444" to be and remain weak, unsafe and insufficient, and to have on it a certain attachment and appliance called a "hand-hold," which was unsafe, weak, and insufficient, the condition of which was unknown to Patton; that when said train was approaching

Collier's Station, the defendant's conductor on said train as he had authority to do, ordered said Patton to uncouple and detach the locomotive from the residue of said train and then to climb upon the top of said car "4444" and to check and stop said train at said station; that in obedience to such order he did uncouple and detach said locomotive and while he was executing said order in a careful and prudent manner without negligence on his part, and whilst necessarily using said hand-hold to enable him to get upon the top of car No. "4444," the said hand-hold broke loose and separated from said car, without any negligence on his part, whereby said Patton was thrown upon the railroad track at or near said station in Brooke county on the 17th day of June, 1879, and killed. For this injury the plaintiff claimed five thousand dollars damages. No question was raised as to the sufficiency of the declaration. The defendant pleaded not guilty, and on the trial of the issue the jury found for the plaintiff three thousand dollars. Before the jury retired to consider of their verdict, the court at the instance of the plaintiff gave the jury the following instructions: "If the jury believe from the evidence that the death of William Patton was caused by a defect in the *hand-hold* attached to the defendant's freight car No. "4444," or by a defect in the boards or timbers of said freight-car to which said hand-hold was fastened, and if the jury further believe from the evidence, that such defect was known to said defendant, or was of such a character that said defendant might have known it by the exercise of that degree of care and diligence which a man of ordinary and reasonable prudence would under the circumstances exercise in regard to his own private affairs, they will find for the plaintiff and assess his damages at such sum as under all circumstances of the case they may think said plaintiff entitled to recover in this action, not exceeding five thousand dollars." To the giving of this instruction the defendant excepted. The defendant then asked the court to charge the jury as follows:

### FIRST PROPOSITION.

"That the verdict of the jury must be in favor of the defendant."

### SECOND PROPOSITION.

"That a brakeman who enters the employ of a railroad company, in consideration of the compensation to be paid him, takes upon himself the ordinary risks of the employment, and the railroad company is not liable to him for injuries through such risk incurred."

### THIRD PROPOSITION.

"That among the ordinary risks to which brakemen upon a railroad train are subjected, are the liabilities to negligence on the part of the machinists, inspectors and repairers who have charge of the repairs of cars and the hand-hold apparatus, and that for injury suffered through the negligence of said employes of the company by a brakeman in their employ, the company is not liable."

### FOURTH PROPOSITION.

"That when a brakeman enters the employment of a railroad company in that capacity and is furnised with machinery of which he can judge as well as any other person, he assumes all the risks incident to the use of such machinery. By entering the service voluntarily, he takes upon himself the hazards and dangers properly incident to the services in which he engages."

### FIFTH PROPOSITION.

"If the jury find from the evidence that the hand-hold mentioned in plaintiff's declaration had become weakened or defective by reason of ordinary use and wear, and the injury resulted from the giving way of such defective hand-hold, and if they further find that the said defects were latent and not discernible by ordinary care and were unknown, the injury thereby occasioned must be regarded from a casualty incident to the business, and the defendant will not be liable."

### SIXTH PROPOSITION.

"That if the defendant should be held responsible that said car when first used was safe and sufficient, yet keeping it in proper repairs afterward is the work of its servants, who are

co-employes of the plaintiff's decedent, and for which the defendant is not liable in this action."

### SEVENTH PROPOSITION.

"Before the plaintiff can recover in this action, he must establish by a preponderance of proof both that a defect such as complained of in plaintiff's declaration existed, and that either the same was known to the defendant or that it could have been known by the exercise of ordinary and reasonable care."

### EIGHTH PROPOSITION.

"The decedent, William Patton, being an employe of the defendant at the time he received the injury from which he died, it was his duty to take ordinary precaution to prevent injury to himself and his fellow-servants while in the discharge of his duty, and if the jury find that the decedent could have seen from an ordinary inspection that the car was in a dangerous condition, then he was guilty of such contributory negligence in going upon said car and using said hand-holds that no recovery can be had in this suit."

The court refused to give to the jury the first, third and sixth of said propositions, and the defendant excepted. The court in lieu of the *second* proposition, instructed the jury "that a brakeman who enters the employ of a railroad company in consideration of the compensation to be paid him takes upon himself the ordinary risks of the employment, and the railroad company is not the warrantor of the safety of the brakeman." The court also modified the defendant's fourth proposition, and instructed the jury as follows: "When a brakeman voluntarily enters the service of a railroad company he takes upon himself the hazards and dangers properly incident to such service; but such railroad company is nevertheless bound to take all reasonable precautions for the safety of the brakeman." To the giving of the said modification of his fourth proposition, the defendant again excepted.

The court refused to give to the jury the instruction as embodied in the defendant's fifth proposition, and in lieu thereof he gave to the jury this modification thereof: "It was the duty of the defendant to provide the brakeman,

Wm. Patton, with sufficient and safe machinery and appliances to be used in the course of his employment; and if the jury believe from the evidence, that he received the injuries that resulted in his death from defects in such machinery or appliances, while using them in the regular course of his employment, and that such defects were unknown to him, but that the defendant in the exercise of ordinary and reasonable care and diligence could have cured them, then the defendant is liable therefor; but if they believe that such defects were latent, and not discernable by ordinary and reasonable care and diligence, and also that they were unknown, then the defendant is not liable." To the refusal of the court to give the fifth proposition asked for by the defendant, and in giving to the jury the said modification thereof the defendant again excepted.

The court refused to give the jury the whole of the defendant's eighth instruction, but in lieu thereof, gave the following: "The decedent, Wm. Patton, being an employe of the defendant at the time he received the injury from which he died, it was his duty to take ordinary precaution to prevent injury to himself and his fellow-servants, while in the discharge of his duty." To the refusal of the court to give the eighth instruction asked for by the defendant, and in giving only a part thereof, it again excepted.

The defendant moved the court to set aside the verdict because it was contrary to the law and the evidence, and because the jury disregarded the instruction of the court, and for other causes, which motion the court overruled, and the defendant again excepted, and filed his bill of exceptions wherein the court certified all the *evidence.* Judgment was entered upon the verdict for the damages assessed by the jury, and costs.

To this judgment the defendant obtained a writ of error and *supersedeas* from a judge of this Court.

*J. Dunbar* for plaintiff in error.

*J. B. Somerville* for defendant in error.

WOODS, JUDGE:

The evidence on behalf of the plaintiff consisted of the statements of fellow-servants of the deceased, who were on the train at the time the accident occurred which caused his death, and they testify as to all the circumstances preceding and attending it, which tended strongly to show that the deceased before and at the time of his death was employed by, and was in the actual service of the defendant upon the freight train in the declaration mentioned, then on its way through the State of Ohio and through the county of Brooke in this State to the city of Pittsburgh; that on the morning of the 17th of June, 1879, the defendant's conductor took into said freight train, at Dennison in Ohio, an old stock car, No. "4444," which from Dennison to Steubenville was the second car from the locomotive, and from Steubenville to Collier's Station was the car next to the locomotive; that when the train was approaching Collier's Station, in Brooke county, where it took water from the tank, the defendant's conductor on said train ordered the deceased, who was at that time the front brakeman on the train, to cut the engine loose to get water and to climb up and help to brake and stop the train, and he was engaged in performing this duty when he was killed; that he had detached the engine from the train, and as he was climbing up the ladder to regain the top of car No. "4444," so that he might use the brake to aid in stopping the train, he caught hold of the *hand-hold* on the top of the car to help himself up, when that part of the roof of the car, to which the hand-hold was fastened, tore loose from the car, and in consequence thereof, he fell upon the track of the railroad and several of the cars ran over him, causing his death; that that part of the frame of the car where the roof boards which held the hand-hold was attached was rotten, that the nails with which said roof boards were fastened to the frame of the car pulled out on account of the rottenness of the wood, and that the timbers were rotten and not sufficient to hold the nails; that the hand-hold is used for getting up and down from the cars; that the car, No. "4444," was examined by two of the plaintiff's witnesses who were present when the accident occurred, immediately afterwards, and they found the frame of the

roof rotten as above described; that Dennison, where car "4444" was taken into the train, was the last station on that line of railroad before reaching Pittsburgh where the defendant's trains were inspected, and that witness, who had been in the defendant's service five years, had never known the inspectors to examine the ladders or hand-holds; and that the deceased at the time of his death was in perfect health, about twenty-three years of age, had a wife and three young children, was earning between fifty and fifty-five dollars per month; he was a good brakeman, and had been employed by defendant as brakeman for nine months before his death. The train that morning did not stop after leaving Steubenville until it reached Collier's Station.

The witnesses on behalf of the defendant were the conductor who was on the train at the time of the accident and of various other employes of the defendant, who examined the condition of car No. "4444" *on the 19th and 20th of January*, 1882, and their testimony is confined to the result of that examination. All these witnesses concur in stating that the car was a double decked stock car, and was constructed in *March*, 1871. The defendant's conductor of said freight train, testified that he was conductor thereof on the 17th of June, 1879, when Patton was killed. He gives the following account of the accident and of the condition of car "4444." "We came to Collier's. I went over to the front end of the train and told Patton to cut off the engine and let it run up the main track to get water before we pulled on the siding. He was standing somewhere on the train, and he went over with me and got down and pulled the pin, and was coming back up the ladder. I told him to come up, and as he was coming up the ladder, he caught hold of the handhold and the hand-hold let go, and he came down on the track, and the train was still in motion. The hand-hold and the board to which it was attached were sound, and the handhold remained firmly fixed on the board to which it was attached; the board had been fastened to the frame work of the car with nails or screws, I am not sure which. I had been over this car at Steubenville, I think. I think I walked over the entire length of the train to the engine at Collier's just a few minutes before. I did not get down off the end of the

car ; I stayed on top of the car until the accident occurred. The condition of the car, so far as I could see was good; there was nothing could be seen from the top of the car; the boards at the end of the car were perfect, whole and continuous up to the time they were pulled off. I examined the car soon after the accident; around where the nails or screws pulled out, the timbers were decayed and left holes where they pulled out. I don't remember how much, I didn't take notice." In answer to the defendant's question, "Have you examined that timber since ?" he answered, "Yes, at Dennison, Ohio, on the 20th of January, 1882."

The residue of this witness's evidence as well as that of all the other witnesses for the defendant is confined to the examination made by them of car "4444," at Dennison, Ohio, on the 19th and 20th of January, 1882, which was done by removing from each end of the car a portion of the roof six or eight inches in width, and tends to show that, *at that time*, more than thirty months after the accident, the timbers of the car to which the roof was fastened, were *perfectly sound*, and that *none of them were at all rotten*. None of these witnesses saw this car, or knew anything about its condition on June 17, 1879, except the conductor; nor do they pretend to state where it has been or how much it has been used since that day. Neither was there any evidence offered tending to show that the defendant before the accident, or *at any other time*, afterwards, caused the condition of said car to be examined or inspected for any purpose whatever; nor was any testimony offered to show that the car No. "4444," was ever at any time before June 17, 1879, on the train on which deceased was employed as brakeman, or that he ever saw it before that morning, or that he was guilty of any negligence in the discharge of his duty or otherwise, in the manner in which he used said hand-hold. Upon this state of facts the jury found the defendant guilty, and we are asked to say whether this verdict is contrary to the law and the evidence.

This case presents for our consideration, questions of the gravest importance to the thousands of persons in the employ of railroad companies in the conduct and management of their business. Their duties and responsibilities to the

traveling public are well understood, and the courts have been inclined to hold them to the most rigid accountability for the slightest negligence of their servants, or of themselves in failing to provide every possible safeguard to the persons and property of their passengers.

But the questions here presented, more especially concern the safety of that large and continually increasing class of railroad employes who are but little known or cared for by the general public, but whose services, perilous as they are valuable, are absolutely necessary for the safety of travel and commerce. The vast extension of railroads, the unprece- * dented increase in the amount of travel and transportation of property over them,.daily increase the numbers of this class of employes, and make their safety a matter of great public concern. Employed as these persons are by great corporations, often acting through hundreds of agents, in different departments of their business, they are, in addition to the ordinary risks incident to their perilous service, often unnecessarily exposed to still greater perils, not necessarily connected with their employment, growing out of the negligence of other employes, in other departments of the corporation's service, with whom they have no intercourse, and over whose conduct in the discharge of their several duties they can exercise no control or influence whatever, except in so far as the corporation can be held liable in damages for personal injuries sustained by them, occasioned by the negligence of such common fellow-servants or the corporation itself.

Under what circumstances is the common master liable to one servant for injuries caused by the negligence of a fellow-servant in the same general employment?

The general rule on this subject has been laid down by different courts and text-writers with various degrees of precision, some almost totally exempting the master from liability and others attempting to extend it, so as to embrace almost every degree of negligence of a fellow-servant, whether engaged in the same department as the servant injured, or in another and wholly different department.

Shearman & Redfield on Negligence, sec. 86, lays down the rule as follows: "A master is not liable to his servant for the negligence of a fellow-servant while engaged in the

same common employment, unless he has been negligent in the selection of the servant in fault, or in retaining him after notice of his incompetency;" but they admit that very grave objections have been made to the doctrine as above laid down.

In *Abraham* v. *Reynolds*, 5 H. & N. 143, the rule is laid down by Pollock, C. B., still more broadly: "When two persons serve the same master, one cannot sue the master for the negligence of his fellow-servant. The rule applies to every establishment. No member of an establishment can maintain an action against the master for an injury done to him by another member of that establishment, in respect to which, if he had been a stranger, he might have had a right of action."

The rule as laid down in Wharton's Law of Negligence, section 224, is identical with that laid down by Shearman & Redfield, *supra*. Wood avoids laying down the rule in terms, but declares the doctrine applicable in such cases, as follows: "When a servant enters into the employ of another, he assumes all the risks ordinarily incident to the business. He is presumed to have contracted with reference to all the hazards and risks ordinarily incident to the employment, consequently he cannot recover for injuries resulting to him therefrom. In all engagements of that character the servant assumes those risks which are incident to the service, and as between himself and the master, he is supposed to have contracted on those terms. If an injury is sustained by the servant in that service, it is regarded as an accident, a mere casualty, and the misfortune must rest on him." But that text-writer qualifies the rule by adding, that "the master is bound to the exercise of reasonable care in reference to all the appliances of the business and is bound to protect his servants from injury therefrom of latent or unseen defects, so far as human care and foresight can accomplish that result, but he does not stand in the relation of an insurer to the servant, and can only be held chargeable when negligence can properly be imputed to him. The servant is bound to see for himself *such* risks and hazards as are patent; but where the danger is not patent he has a right to presume that the master has discharged his duty, and that the appliances of the business

*are reasonably* safe, and free from hazard." Wood's Law of Master and Servant, sec. 326.

Chief Justice Shaw, in *Farwell* v. *Boston & Worcester R. R. Corporation,* reported in 4 Metc. 49, says the general rule is that "he who engages in the employment of another, for the performance of specified duties for compensation, takes upon himself the natural and ordinary risks and perils incident to the performance of such services, and in legal contemplation the compensation is adjusted accordingly. And we are not aware of any principle which should except the perils arising from the carelessness or ignorance of those who are in the same employment. These are perils which the servant is as likely to know, and against which he can as effectually guard as the master. They are perils incident to the service, and which can be as distinctly foreseen and provided for in the rate of compensation as any other." This statement of the rule is exceedingly broad, and in effect declares the master to be wholly exempt from responsibility of any injury resulting from the negligence of any fellow-servant who may be engaged in the same employment. The case then before the learned judge (who announced this doctrine) presented only the question, whether the plaintiff who was an engineer on the defendant's railroad, could hold it responsible for any injury sustained by him by negligence of the defendant's switchman, who had long been in its employ, and who was known to the plaintiff to be a careful and trustworthy servant, and where he and the plaintiff had both been appointed by the same superintendent. This case was decided in 1842, when the present gigantic system of railroads, which now traverse the several States, was in its infancy and rested mainly on the authority of Lord Abinger, C. B., in the case of *Priestly* v. *Fowler,* decided in England in 1837, which was an action brought by a servant against his master, who was injured by the breaking down of a van in which the master had ordered him to go with his goods, caused by the negligence of his fellow-servant, in overloading the van. In this case the plaintiff was not permitted to recover upon the broad ground that there was no precedent for such an action by a servant against his master. But even in that case the learned judge felt himself bound to add that there is no

doubt the master is bound to provide for the safety of his servant, in the course of his employment, to the best of his judgment, information and belief. The servant is not bound to risk his safety in the service of his master, and may, if he thinks fit, decline any service in which he reasonably apprehends injury to himself, and in most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probabilty and extent of it as the master. In that sort of employment, described in the declaration in that case the plaintiff must have known as well, or perhaps even better than his master, that the van was overloaded. With due deference to the authority of so learned a judge, it seems to us that the facts of the case scarcely warranted, and they certainly did not call for the, laying down of a rule of universal application, when it was apparent that the injury to the plaintiff was clearly the result of his own inexcusable negligence, for before he entered the van, he must have seen and known, that it was overloaded, and for this reason he was not entitled to recover. And Chief Justice Shaw, in reaching the conclusion announced in 4 Metc. *supra*, seemed conscious that the rule as laid down by him, might be understood as declaring the master totally exempt from liability to a servant for injuries caused by the negligence of his fellow-servant, and he therefore felt it necessary to add a caution against any hasty conclusion as to the application of this rule to cases not within the same principle, "for it may be varied and modified by circumstances which did not appear in that case, where no wilful wrong or actual negligence was imputed to the defendant, and where *suitable means were furnished*, and suitable persons employed to accomplish the end in view." "We are far from intending to say that there are no implied warranties and undertakings arising out of the relation of master and servant."

There seems to be no conflict among the authorities, that where the injuries complained of have been caused to the servant by the direct act, or negligence of the master himself, he is liable; nor is the rule different, when the wrong or negligence, which caused the injury, was the act of an agent who occupied the place of the master, for then, the

master is deemed to be present, and is consequently liable for the manner in which it is performed. *Flike, Adm'r*, v. *Boston & Albany R. R. Co.*, 53 N. Y. 549; *Ryan* v. *Fowler*, 24 N. Y. 410; *Snow* v. *Housatonic R. R. Co.*, 8 Allen 441; *Gilman* v. *Easton R. R. Co.*, 10 Allen 236.

Where a master places the entire charge of his business, or a distinct department of it, in the hands of an agent, exercising no discretion and no oversight of his own, it is manifest that the neglect of the agent, of *ordinary care* in supplying and maintaining suitable instrumentalities for the work required to be done is a breach of duty for which the master should be held liable. In such a case the negligence of the agent is the negligence of the principal. *Snyder* v. *Philadelphia*, 78 Pa. 25; Whar. L. of Negl. § 229.

But what is the duty of the master to his servant employed by him in a perilous employment? The ordinary risks and perils incident to the employment which the servant can foresee, or shun, or avoid, or guard against by prudence, skill and forecast are assumed by him, and they are supposed to enter into the consideration to be received by him for his services. But before the services of the servant, in many employments, can commence, many duties must be performed, many agencies must be set to work by the master, and these duties and agencies must be continuously performed and employed, so long as the general business is continued. With railroads, these duties are perpetual. Constructed at enormous expense, furnished with engines and machinery of the most costly and substantial character, supplied with every appliance which experience can suggest, or science and skill construct, tending to insure the safety of travelers and merchandise, running with the greatest speed, day and night, requiring the duties of those in charge of their trains to be instantly performed, it would seem upon reason and principle that the corporation, the general master of all these employes, in all its various departments, should be held accountable for any failure to furnish to its servants, and keep in safe repair all such usual appliances as are necessary for the performance of the servants' duties, with such reasonable degree of safety that the ordinary risks and perils of the employment may not be increased. It having furnished such machinery and

appliances, the master, by himself or his agents, whose duty it is to keep them in proper repair, suffer the same to be and remain out of repair, in an unsafe and unsound condition, by long continued use or otherwise, and this fact be not known to the servant, and injury results to him from the proper use of these appliances without negligence on his part while in the performance of his duty, the master is liable, because it was his duty to keep such machinery and appliances in good repair and in safe condition. Neither ought he to be permitted to screen himself from liability, because he did not in fact know that the same were out of repair, if by the exercise of ordinary care and inspection by persons skilled in the knowledge of such machinery and appliances, such defects might have been discovered and repaired.

These views are supported by the authority of many cases, adjudicated since that in 4 Metc. supra. In Snow v. Housatonic R. R. Co., 8 Allen 441, Snow was injured while uncoupling cars of the Western Railroad Company at a point where the latter had the right to use the road and switches of the defendant at a place where its road crossed the public highway where it had laid down three lengths of plank between its rails the whole width of the highway; for two months before the accident one of these planks had in it a hole in which the plaintiff's foot was caught and crushed by the cars, while in the performance of his duty. For this injury he sued the defendant, and it was held liable. Justice Bigelow delivering the opinion of the court in that case said: "It is certainly most just and reasonable, that consequences which the servant or workman must have foreseen on entering into an employment, and which due care on the part of the employer or master could in no way prevent, should not be visited on the latter. But it is otherwise where injuries to servants or workmen happen, by reason of improper and defective machinery and appliances used in the prosecution of a work. The use of these they could not foresee. The legal implication is, that the employer will adopt suitable instruments and means with which to carry on his business. These he can provide and maintain by the use of suitable care and oversight, and if he fails to do so, he is guilty of a breach of duty under his contract, for the consequences of

which, he ought in justice and sound reason, to be responsible."

In *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240, it was held, that where an engineer employed by the defendant to drive a locomotive over its road was injured by an explosion caused by a defect in the engine, which was due to the neglect of the defendant's agents who were charged which the duty of keeping the engine in proper repair, although the directors and superintendent had no reason to suspect negligence or incompetency on the part of its agents, the defendant was held liable for the damages sustained by the plaintiff by such defect in the engine. In this case the defendant insisted, that as the master mechanic whose duty it was to keep the engine in repair, was a fellow-servant of the plaintiff, the defendant was not liable for the negligence of the master mechanic in failing to keep the engine in repair, but it was held liable for the injury caused by such negligence; and the court held the rules of law to be well settled, that a servant by entering his master's service assumes all the risks of that service which the master exercising due care cannot control including those arising from the negligence of his fellow-servants; but that the master is bound to use ordinary care in providing suitable structures and engines, and proper servants to carry on his business, and is liable to any of their fellow-servants for his negligence in this respect. This care he can and must exercise in procuring, keeping and maintaining such servants, structures and engines. If he knows, or by the exercise of due care, might have known that his servants, structures or engines are either at the time of procuring them, or at any subsequent time, he fails in his duty; and he cannot divest himself of this duty of having suitable instruments of any kind, by *delegating to an agent* their employment or selection, *their superintendence or repair.*" And in a subsequent part of his opinion the learned judge adds: "The rule of law which exempts the master from responsibility to the servant for injuries received from the ordinary risks of his employment, including the negligence of his fellow-servants does not excuse the employer, from the exercise of ordinary care, in supplying and maintaining suitable instrumentalities for the per-

formance of the work required. One who enters the employment of another, has a right to count on this duty and is not required to assume the risks of the masters' negligence in this respect. The fact that it is a duty which, when the employer is a corporation, must always be discharged by officers and agents, does not relieve the corporation from the obligation. The agents who are charged with the duty of supplying safe machinery are not in the true sense of the rule relied on to be regarded as fellow servants of those who are engaged in operating it. They are charged with the *master's* duty to his servant. They are employed in distinct and independent departments of service, and there is no difficulty in distinguishing them. In one the master cannot escape the consequence of the agents' negligence; if the servant is injured in the other, he may." 'A corporation must perform this duty through officers and superintendents; but *the duty*, is the duty of the corporation, and not *theirs*, and for neglect of this duty, in this respect, the corporation is responsible."

In *Fike, Ad'mr*, v. *Boston & Albany R. R. Co.*, 53 N. Y. 549, where the plaintiff's intestate who was a fireman on a freight train of the defendant, was killed by a collision with part of another freight train of the defendant, which had been negligently sent out by its despatcher of trains without a sufficient number of brakeman, and having broken in two, on a steep grade, the hinder half of the train became unmanageable, and ran down the grade and thus caused the collision, the defendant was held liable.

In *C. & N. W. Railway Co.* v. *Taylor*, 69 Ills. 461—where the switch-tender while attempting to make a flying switch was killed by the advancing car, on which there was no light at the front end of the cars, and it was otherwise too dark to see them—the railroad company was held liable; and Chief Justice Bruce delivering the opinion of the court said the "railroad company impliedly contracted with the deceased that it would use due care in providing such machinery, apparatus and appliances, and other necessary means suitable and proper to the prosecution of the business in which its servants were engaged, so as to insure a reasonable degree of safety to life and security against injury."

In the case of *Chicago & N. W. Railroad Co.* v. *Jackson*,

55 Ill. 492, Jackson, who was a brakeman on the appellant's railway, while engaged in the discharge of his duty and being on the end of a freight car holding to an iron rod, in obeying the order of his superior in attempting to descend from the car for the purpose of uncoupling it from the engine, while in motion, swung himself around so as to descend by a ladder on the side of the car, but owing to the fact that it was out of repair, lacking two rounds that were missing, he failed to get a hold for his feet, and the weight of his body broke his hold of the iron rod when he fell to the ground, and the engine which was backing at the time, passed over both his legs, rendering amputation thereof necessary. The defence was that the plaintiff was guilty of contributory negligence, knowing as he did the deficiency in the ladder. It did not appear that the plaintiff ever saw that car before, or that he knew the condition of the ladder, and as the jury found for the plaintiff the appellate court held that there was not sufficient proof before the jury to charge him with knowledge of the defect, and the company was held liable. Justice Walker in delivering the opinion of the court, announced the law to be that, "it is the duty of these companies to furnish their employes safe materials and structures. Such an obligation is permanent and cannot be avoided by them, by delegating the power to others and the understanding with their servants is direct, that they will furnish suitable and safe materials and structures. This car was placed upon the road by some one superior to the plaintiff in authority, and he was acting under such authority. He had no choice but to obey orders, and he was compelled by those above him in authority to ascend the car, and again descend and uncouple the car from the engine when required. He was not, and could not be responsible for the defect. Hence in this case the plaintiff should not be prejudiced by the negligence of those having charge of the inspection and repairs of the cars, as they were superior to him in authority." See also *Chicago & N. W. Railroad Co.* v. *Swett*, 45 Ill. 197. A brakeman who is negligently required to handle cars out of repair, unfit for use and dangerous, and is injured without fault on his part, may recover damages from the company. He has a right to assume that the cars which he is required

to couple, are in a proper state for such handling. It is the duty of the master to furnish his employes with proper machinery or instrumentalities for their use in the work assigned them, and to see that the same are kept in reasonably safe condition or repair. He may intrust this duty to others, but it is still his duty, but he cannot by doing so, escape the responsibility for its negligent non-performance. The acts of his agents in this regard are his acts; their negligence is his negligence. *King* v. *O. & Miss. R. R. Co.*, 14 Rep. 673.

In the case of *Toledo & Wabash R. R. Co.* v. *Ingraham*, 77 Ills. 309, the circumstances of the case were almost identical with those in *Chicago & N. W. R. Co.*, 55 Ills., *supra*, and the court again held the defendant liable, although there was no proof that there was any visible defect in the ladder or that the plaintiff had ever seen that car before the time the accident occurred.

The case of *Brann* v. *The C., R. I. & P. R. Co.*, 53 Iowa 595, was one similar in all respects to the one under our consideration. The plaintiff was in the employ of the defendant as a brakeman on one of its freight trains. On one of these cars was a ladder and also a hand-hold for the purpose of aiding the employes to reach the ladder ascending or descending. The hand-hold was out of repair; "the defect was a loose bolt or screw on one end that assisted in retaining the hand-hold in position." The car had been taken into the defendant's train at Beverly, Mo., on the 12th of October, 1876, from a connecting road, and was taken to Chicago and it was on its return trip on the 17th of October when the accident occurred. There was no evidence that the defendant had any car inspector either at Chicago or between that place and Beverly. In this case there were verdict and judgment in favor of the defendant under the ruling of the trial-court. But the supreme court reversed this judgment and held, "that it is the duty of a railroad company not only to furnish reasonably well constructed and safe machinery and appliances for the use of the employes operating its road, but to exercise a continued supervision over the same to keep them in proper repair; that the duty of inspection is affirmative and must be continuously fulfilled and positively per-

formed; that as such a corporation must act through its
agents and employes the negligence of the employe upon
whom the duty of inspection is devolved is the negligence of
the corporation.   The brakemen on freight trains and such
inspector cannot be regarded as co-employes in such sense as
to prevent the former from recovering of the corporation,
because of the negligence of the latter." See also *King* v.
*O. & Miss. R. R. Co.*, *supra.*

This question was before the Supreme Court of the United
States in the case of *Hough* v. *Railroad Company*, upon a writ
of error from the circuit court for the Western District of
Texas.   The suit was brought by the widow and child
against the Pacific Railway Company to recover damages on
account of the death of W. C. Hough while in its employ-
ment as an engineer.   The engine coming in contact with
some animal was thrown from the track over an embank-
ment whereby the whistle was knocked off or blown from
the boiler, and from the opening thus made, the deceased
was scalded to death.   The negligence alleged was that the
whistle was insecurely fastened to the boiler and that the
engine was thrown from the track because the cow-catcher
was defective and that these defects were owing to the negli-
gence of the defendant's master mechanic and of the foreman
of the round-house at Marshall, to whom was committed the
exclusive management of the defendant's motive power, with
full control over the engineers; that all these defects were
made known to him and that he promised to repair them,
which he failed to do.   The principal ground of defence was
that if any of the alleged defects existed, it was because of
the negligence of the master mechanic and the foreman of
the round-house, for which negligence the company claimed
it was not liable.   The evidence tended strongly to show
the facts to be as alleged by the plaintiffs, and that the defects
were caused by the negligence of the defendant's master me-
chanic and foreman.   Upon this state of facts the circuit court,
in effect, instructed the jury that they must find for the defend-
ant.   Harlan, Justice, delivering the opinion of the Supreme
Court of the United States, after a full review of the leading
cases in many of the State courts, and in the courts in Eng-
land, says, "A railroad corporation may be controlled by

competent, watchful and prudent directors who exercise the greatest caution in the selection of a superintendent, under whose supervision and orders its affairs and business in all its departments are conducted.  The latter in turn may observe the same caution in the appointment of subordinates at the head of the several branches or departments of the company's service.  But the obligation still remains to provide and maintain in suitable condition the machinery and apparatus to be used by its employes.  Those (persons) in the organization of the corporation, who are invested with controlling or superior authority in that regard, represent its legal personality; *their negligence* from which injury results, *is the negligence of the corporation.*  The latter can not in respect of such matters interpose between it and the servant who has been injured, without fault on his part, the personal responsibility of an agent, who in exercising the master's authority, has violated the duty he owes as well to the servant as to the corporation."  It was accordingly held in that case that a railroad company is liable, when its officers or agents who are invested with a controlling or superior duty in that regard are, in discharging it, guilty of negligence, from which injury to an innocent party results.

To entitle a brakeman to recover of a railroad company damages for an injury sustained by him while in its employ, the burden is upon him to show the negligence of the company.  But he is not bound to do more than to raise a reasonable presumption of negligence on the part of the company. *Greenleaf* v. *C. Ill. R. R. Co.* 29 Ia. 14.  Shear. & Red. on Negligence, sec. 99.

From an examination of the authorities, the reasoning of the judges, as well as upon sound reason, and considerations of public policy, we conclude that it is the duty of a railroad company, not only to furnish reasonably well constructed and safe machinery and appliances for its cars, for the use of its employes engaged in operating its road, but also to exercise continual supervision over the same to keep them in good and safe repair; and that *it cannot divest itself of duty,* nor relieve itself from responsibility for its non-performance, by delegating it to any subordinate officer or servant in any of its departments; and if it does delegate this duty to any of

its servants, vested with controlling or superior authority in regard thereto, the negligence of such servant is the negligence of the company.

If such company or its servant to whom it has delegated the performance of said duty suffer such machinery, cars or appliances, either from long continued use or any other cause to become unsound, unsafe or defective, and this unsoundness, and defective condition, are known to the company, or by the exercise of due care and diligence, it might have become known to it, and injury therefrom results to one of its employes, without any fault of his while in the performance of his duty, the company is responsible to such servant for such injury; and that to guard against accidents resulting from such defects in its machinery, cars and appliances, it is the duty of the company to have the same continuously inspected by persons competent to perform that duty. And, as the company must act through its agents and employes, the negligence of the employe, charged with the duty of inspection, or of the master mechanic charged with the duty of keeping the machinery, cars and appliances in repair, is *the negligence of the railroad company itself;* and a brakeman on one of its freight trains, and such inspector or master mechanic, cannot be regarded as *fellow-servants,* in such a sense, as to prevent the brakeman from recovering of the corporation for an injury sustained by him because of the negligence of such inspector or master mechanic.

If therefore one of the brakemen in the employ of a railroad company while in the discharge of his duty, and without any fault on his part, is injured by the breaking loose, or giving way of a hand-hold, or any other appliance attached to its cars, and used to assist such brakeman in the performance of his duty, and such defect was one that could have been discovered by a careful inspection of the car, and repaired, such railroad company is liable to such brakeman for the injury sustained by him although the proximate cause of the injury was a result of the negligence of the inspector or of the master mechanic, charged with the duty of inspecting and keeping such hand-hold in repair.

It follows from these deductions that the defendant in the case under consideration, at the time the plaintiff's intestate

was killed was guilty of negligence in failing to inspect said car No. "4444" before or at the time it was taken into its freight train before daylight on June 17, 1879, whereby the defective and dangerous condition of said hand-hold would have been discovered, and the injury to the deceased avoided; and especially, when it must have known as the evidence clearly showed, that the car was an *old one*, and had, at that time, been in use for more than eight years, and that the company for this negligence was liable to the plaintiff's action.

There is nothing in the case to indicate that the verdict was not fully warranted by the evidence, or that the jury was actuated by partiality, prejudice or passion, without which this Court could not disturb it because it was excessive in amount. The deceased was a young man, of robust health, in the prime of life, having a wife and three young children dependent upon him for support, a faithful and obedient servant of the defendant, in the discharge of his duty, without any negligence on his part, almost instantly killed, by the giving way of a defective hand-hold, which it was the duty of the defendant to have discovered and repaired. We are therefore of opinion that the verdict was not excessive in amount, and was fully warranted by the evidence, and that the circuit court did not err in refusing to set the verdict aside for that cause.

From the principles of law hereinbefore announced, we are of opinion that the instruction given to the jury on the motion of the plaintiff correctly propounded the law, and was rightly given. The *first, third, fourth and sixth*, asked for by the defendant were clearly erroneous, in the form proposed, and were properly refused. The modifications of the *second and fourth*, given to the jury correctly propounded the law, and they were properly given to the jury. The defendant's *fifth* instruction, in the form proposed, was clearly erroneous, because it wholly ignored the duty of the defendant to provide the deceased with sufficient and safe machinery and appliances to be used in the course of his employment, and also because it indicated to the jury, that if the defect in the hand-hold was latent, and not discernable by ordinary care and were unknown, the defendant was not liable, when, as we have

already shown, the true question was: Could it have been discovered, not by any person, but could it have been discovered, by a competent inspector charged with the performance of that duty? This instruction was properly refused and the modification thereof which was given to the jury was unobjectionable. The defendant's eighth instruction was erroneous for the same reason as was the fifth, and for the additional reason, that there was no evidence in the cause to support it, for there was no evidence offered tending to show that any inspection of car No. "4444" had ever at any time been made before the accident occurred. That part of the defendant's eighth instruction which was given to the jury was unexceptionable, and was rightly given. We are of opinion that the circuit court did not err in giving or refusing to give to the jury any of the instructions which were given or refused; and that there is no error in said judgment of the circuit court of Brooke county, and the same is therefore affirmed with costs to the defendant, and damages according to law.

AFFIRMED.