# CHARLESTON.

## RILEY v. W. VA. CENT. & P. RAILWAY CO.

Submitted September 3, 1885.—Decided November 28, 1885.

1. When a railroad company puts a superintendant, foreman or other employe in its place to discharge some duty which it owes to its servants or employes, as to such duty such superintendent or other employe is not a co-servant but the representative of the company, and as to such duty the company is bound by the acts or omissions of such middleman the same as though the acts had been done or omitted by the company itself. (p. 156.)

| | |
|---|---|
| 27 | 145 |
| 28 | 617 |
| 30 | 814 |
| 31 | 120 |
| 31 | 121 |
| 27 | 145 |
| 34 | 535 |
| 27 | 145 |
| 35 | 399 |
| 36 | 410 |
| 27 | 145 |
| 37 | 503 |
| 37 | 603 |
| 27 | 145 |
| 39 | 102 |
| 38 | 41 |
| 38 | 211 |
| 38 | 279 |
| 38 | 462 |
| 38 | 529 |
| 38 | 579 |
| 27 | 145 |
| 40 | 438 |
| 27 | 145 |
| 43 | 392 |
| 43 | 403 |
| 27 | 145 |
| 52 | 177 |
| 27 | 145 |
| 62 | 693 |

2. Whenever such company delegates to another the performance of a duty to its servants, which it has impliedly contracted to perform itself, or which rests upon it as an absolute duty, it is liable for the manner in which that duty is performed by the middleman whom it has selected as its agent, and to the extent of the discharge of these duties by the middleman he stands in the place of the company, but as to all other matters he is a mere co-servant. (p. 157.)

3. The question in such case is not whether the company reserved to itself any oversight or discretion, but whether it did in fact clothe the middleman with power to perform its duties to the servant injured. (p. 157.)

4. When a servant enters into the employ of another he assumes all the risks ordinarily incident to the business of such employment; but the master is not justified in exposing the servant to extraordinary risks or hazards not naturally incident to the service in which he is employed. (p. 158.)

5. It is the duty of a railroad company not only to furnish a reasonably well constructed and safe railway and track for the use of its employes, but it must also exercise continued supervision over the same and keep them in good and safe repair and condition. (p. 159.)

6. If such company or its servant to whom it has delegated the performance of this duty, suffers such railway or track or its cars and machinery from any cause to become dangerous and unsafe, and this condition is known to the company or such servant, or by the exercise of due care or diligence might have become known to it or such servant, and injury results therefrom to one of its servants other than the one having such delegated power without fault on his part, while in the performance of his duty, the company is responsible to the servant so injured. (p. 160.)

7. In an action by an employe against a railroad company for negligent injury to his person the plaintiff may recover the expenses of his cure, the value of his time lost during his cure, and a fair compensation for his physical and mental suffering caused by the injury as well as for any permanent reduction of his power to earn money. (p. 161.)

8. Contributory negligence is such negligence on the part of the plaintiff as directly contributes to and in part causes the injury. (p. 164.)

9. It is the settled law of this State that the burden of proving contributory negligence rests upon the defendant. (p. 165.)

10. In an action by an employe against a railroad company for an injury to the plaintiff caused by a particular stump left by the de-

fendant in dangerous proximity to its railway it is not error to reject testimony offered by the defendant, which tends to show generally, that the defendant's railway in its construction compares favorably with other railroads.  (p. 166.)

11. A case in which the judgment of the circuit court is reversed, because the court refused to give to the jury an instruction asked by the defendant, which a majority of this Court think, under the circumstances and evidence in the case, should have been given to the jury.  (p. 152, 163.)

*W. C. Clayton*, *G. E. Price* and *W. P. Whyte* for plaintiff in error.

*F. M. Reynolds* and *C. E. Daily* for defendant in error.

SNYDER, JUDGE:

Action of trespass on the case brought February 16, 1883, in the circuit court of Mineral county by James H. Riley, a minor eighteen years of age, by his next friend against The West Virginia Central and Pittsburgh Railroad Company, for injuries to the plaintiff while acting as a brakeman on a train of the defendant.    The case was tried by jury and a verdict returned in favor of the plaintiff for $3,500.00.    The defendant moved the court to set aside the verdict and grant it a new trial, which motion the court overruled and on January 21, 1884, rendered judgment for the plaintiff for the damages found by the verdict of the jury.    During the trial the defendant took several bills of exceptions, and to review the rulings therein excepted to it obtained this writ of error and *supersedeas*.

There was a demurrer to plaintiff's declaration which the court overruled.    This was assigned as error, but counsel for the defendant, the plaintiff in error, have not argued that assignment in this Court, and as the declaration appears to be entirely sufficient, it must be held that the demurrer was properly overruled.

All the testimony is certified.    The evidence of the plaintiff tended to prove the following facts:   On May 3, 1882, the plaintiff, then eighteen years of age, while in the employ of the defendant and acting as brakeman on a train consisting of one engine and tender was struck by a stump standing on the side of the railway about half way between Mineville and Shaw and knocked off the train, and in falling to the ground

came in contact with the engine, whereby he was so injured that one of his legs had to be amputated, and he was otherwise bruised and hurt. The grade of the road was over 150 feet to the mile, and the train was backing down the grade with the tender in front of the engine at the rate of from ten to fifteen miles per hour. The plaintiff was not a regular brakeman, but at different times before the injury he had acted as brakeman three days and had been working on the defendant's road in various ways from the preceding October. He was directed by the conductor to go on the train, from which he was knocked off, as a brakeman, and after he and the conductor had put down the brakes he was told by the fireman to look at the brakes and see whether the wheels were sliding. He was then standing on the footboard between the engine and the tender nearest the brake-handle, and just as he was in the act of looking over to see the wheels he was struck by the stump across the forehead and knocked off. The road ran along the hill side with a cut or bank on the one side and open on the other side. It is the fireman's duty to look after and prevent the wheels of the tender from sliding, but when the train consists of the engine and tender only, it is usual for the hand nearest the brake to attend to that matter. The plaintiff being thus told to look and see if the wheels were sliding, he took hold of the hand-holds of the engine and tender and looked over on the hill-side of the train, but before he had leaned out far enough to see the wheels he was kocked off. In order to see the wheels it was necessary to project his head six inches beyond the side of the engine or tender. Where the stump stood there was a curve in the road so that it could not be seen more than thirty or forty yards. The stump was standing in loose, loamy soil which by repeated rains and wet weather had formed a slip or slide around the stump and it gradually slipped into the road closer to the track. As the slip moved down the bank, the rock and dirt fell on the track and was removed by the section men, but the stump remained. About three or four weeks before the injury to the plaintiff, the stump had slipped so near the railway that it would not clear an engine more than from four to six inches. The top of it was inclined to the track and it was about two and a half to three feet high, the

bottom of it was about four feet above the road-bed and by the removal of the rock and dirt in front of it the stump was left standing upon a nearly perpendicular bank four feet high above the track with the top of it within from four to six inches of the side of a passing car or engine. Two or three weeks before the injury to the plaintiff this stump came near knocking another brakeman off the coal-hoppers and he told the section boss and his men that they ought to take it out, but it was not done until the evening after the plaintiff was hurt, and then it was taken out by the defendant's section men. When the plaintiff was struck he fell and became unconscious and could not tell afterwards what hit him, but there was a bruise or mark on his forehead as if he had been struck there by something. He was found, after the train had been stopped, about twenty-five or thirty yards below the stump on the track; and there were marks on the ground showing that the plaintiff had first fallen nearly opposite the stump. He was then taken to his brother's, where his leg was amputated. The evidence of the plaintiff tended to prove other facts, but they are not in my view of this case material.

The defendant offered evidence tending to prove that the plaintiff was cautioned not to look out or he would get hurt; that there would have been no danger in looking over at the wheels from the open side of the train; that no one saw the plaintiff when he was hurt or struck; that the stump stood in a very solid bank of dry, red clay, and there was no slip there; that dirt had fallen from the roots which were deeply imbedded, but the stump had never moved; that it would clear a car about a foot and a half; that in the fall before the injury the master of construction and repairs of the defendant's road fastened a test-board to a Pullman car six inches wider than the car and it passed over the road without touching anything; that a Pullman car is ten feet six inches wide, ordinary cars are nine feet six inches, and the engine and tender are not so wide; that an inspector went over and examined the road frequently, and that the road was as safe for trains and train-men as any road. The defendant also offered other evidence tending to contradict many other facts which the plaintiff's evidence tended to prove.

After all the evidence had been introduced, the plaintiff asked the court to instruct the jury as follows:

" PLAINTIFF'S INSTRUCTION No. 1.

" The court instructs the jury that it was the duty of the defendant to use all reasonable care and diligence for the safety of its employees and in order to keep its track clear from obstructions immediately thereon or so near thereto as to be dangerous, and that the plaintiff in entering into the service of the defendant, had a right to presume that the defendant had discharged this duty, and the plaintiff in entering the employment is presumed to have assumed only those ordinary risks connected with his duties which would exist after the discharge by the defendant of the duty above set out. And if the jury believe from the evidence that the defendant failed to discharge such duty, and that the injury complained of resulted to the plaintiff from such failure, without fault or negligence on the part of the plaintiff at the time of the injury, which ordinary care and prudence on his part could have avoided, then the defendant is liable for such injury.

" PLAINTIFF'S INSTRUCTION No. 2.

" The court instructs the jury that if they believe from the evidence that the plaintiff Riley, while acting as brakeman in the employment of the defendant, received the injury complained of from being struck by a stump standing in dangerous proximity to the defendant's railroad track, and that the situation of the stump was known to the section foreman or foreman of a gang of men employed by defendant to keep said section in safe and proper condition, or might have been known to him by the use of care and diligence, and that to him had been assigned by the defendant the duty of having said stump and objects of like character removed from said section of the road, then the knowledge of such foreman is the knowledge of the defendant, and his negligence (if the jury believe from the evidence there was such negligence) in failing to remove such stump or in failing to use care and diligence in ascertaining whether said stump was in dangerous proximity to the road, was the negligence of the defendant.

" PLAINTIFF'S INSTRUCTION No. 3.

" If the jury believe from the evidence that there was a stump standing upon or alongside of the bank of the defendant's railroad in dangerous proximity to the track or cars or

engines and tender passing over said track whereby the risk of injury to the plaintiff in the discharge of his duties was increased beyond the ordinary risks incident to such employment, and that said stump was allowed to remain there after defendant knew of its situation, or might by the exercise of reasonable care and diligence have known thereof, and if they further believe that the plaintiff received the injury complained of in consequence of such stump having remained there, after defendant knew or might have known by the use of care and diligence of its situation, and that the plaintiff at the time he received such injury was exercising ordinary care and prudence as a brakeman and was in the discharge of his duties as such at the time the injury occurred, and did not know of the situation of said stump or might not have known of it by the exercise of reasonable care and prudence, then the defendant is liable for said injury.

" Plaintiff's Instruction No. 4.

" The court instructs the jury that, if they find the defendant guilty, they are, in estimating the damage, at liberty to consider the health and condition of the plaintiff before the injury complained of as compared with his present condition in consequence of said injuries, and whether said injury is in its nature permanent, and how far said injury is calculated to disable the plaintiff from engaging in those pursuits and employments for which in the absence of said injury he would have been qualified, and also the physical and mental suffering to which he was subjected or may be subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained."

To which instructions the defendant objected, but the court overruled the objection and gave the instructions and the defendant excepted.

The defendant then asked the court to give the jury eleven instructions numbered consecutively from one to eleven, to which the plaintiff objected, and the court refused to give any of said instructions as asked, but modified No. 1, No. 4, No. 7, No. 8 and No. 9, and then gave those as thus modified and rejected all the others except No. 3, which is hereinafter referred to. The said instructions as asked, with the modifica-

tions inserted in brackets in Nos. 1, 4, 7, 8 and 9, are as follows:

### "DEFENDANT'S INSTRUCTION No. 1.

"The court instructs the jury that if they believe from the evidence that the railroad of the defendant upon which plaintiff was employed when he was injured was a new road; that it was built alongside of a precipitous mountain, with a side-cut most of the way on one side, and was open on the other side next to Deep run; that by reason of it being a new road, and by the character of the country through which it passed, the service upon said road was more dangerous than it would otherwise have been, and if they believe that the plaintiff knew that it was a new road and the character of the country through which it passed; and if they further believe from the evidence that the defendant used such care in the construction of its road and keeping it in repair [and in a safe condition] as an ordinary, prudent man would use in his own business, then the law is that when the plaintiff entered into the service of the defendant, he took upon himself all the risks incident to such service, [but not those caused by the want of such care on the part of defendant.]

### "DEFENDANT'S INSTRUCTION No. 2.

"The court instructs the jury that if they believe from the evidence that it was safe to look over on the left hand side of the tender on which plaintiff was riding at the time of the accident to see whether the tender wheels were sliding, while it was dangerous to look over for that purpose on right hand side of said tender, and that it was practicable to ascertain whether the wheels were sliding by looking over the left side, as well as on the right side, and the plaintiff before the accident knew, or had reasonable opportunity to know, and ought to have known that it was so, and yet chose to look over on the right hand side and was injured by so doing, then the plaintiff was guilty of contributory negligence and the jury must find for the defendant, even if they further believe from the evidence that some one on the engine told plaintiff to look over and see whether the wheels were sliding.

### "DEFENDANT'S INSTRUCTION No. 4.

"The court instructs the jury that if they believe from the

evidence that the plaintiff Reily, before the occurrence of the injury complained of, had a reasonable opportunity to know, that it was dangerous to lean over on the right hand side of the engine and tender for the purpose of watching the wheels or for any other purpose, and that his injury was caused by his so leaning over, [and that in doing so he was not in the proper discharge of his duties,] then the plaintiff can not recover in this action.

## "Defendant's Instruction No. 5.

"The court instructs the jury that the law did not require the defendant to warrant or insure the safety of its road to the plaintiff, one of its employees, but only to exercise reasonble and ordinary care in the selection of its agents and employees whose duty it was to construct and keep said road-bed in repair and provide said agents and employees with proper facilities and material necessary to enable them to construct its said road and keep it in repair, and if they believe that the defendant discharged its duty in this respect then the plaintiff cannot recover, but their verdict must be for the defendant.

## "Defendant's Instruction No. 6.

"The court instructs the jury that the repair-men and their foreman were co-employees with the plaintiff in the service of the defendant, and if they believe from the evidence that the injury to the plaintiff was occasioned by the negligence of said repair-men or their foreman, then the defendant is not responsible to the plaintiff for said injury and he cannot recover.

## "Defendant's Instruction No. 7.

"The court instructs the jury that if they believe from the evidence that the plaintiff was brakeman and that Jacob Barker was fireman on the train; that the fireman had no authority over the brakeman; and if they further believe that it was the fireman's duty to attend to the brakes on the tender and see that the wheels did not slide, and not the duty of the brakeman, and that the said Barker ordered or requested the plaintiff to look to see if the wheels of the tender were sliding, and in doing so the plaintiff was injured, then the plaintiff can not recover in this action, and their verdict must be for the defendant, [unless they further be-

lieve that the plaintiff was a minor, inexperienced in the duties of brakeman, and that the conductor of the train was present with the plaintiff on the tender at the time the order or request was given by the fireman, and that the plaintiff had reason to believe and did believe that it was his duty to look as ordered or requested and was not informed to the contrary.]

### "DEFENDANT'S INSTRUCTION No. 8.

"The Court instructs the jury that even if they believe from the evidence that the defendant was guilty of negligence in allowing a stump to remain in dangerous proximity to its road, and that the plaintiff was knocked off the engine by said stump and injured, still the plaintiff is not entitled to recover in this action, if they believe from the evidence that he by his negligence contributed [directly] in any degree to the injury complained of. [But to bar the plaintiff from recovery, his alleged act of negligence must have been such as he could reasonably expect would result in his injury, and moreover such negligence must be shown by a preponderance of all the evidence.]

### "DEFENDANT'S INSTRUCTION No. 9.

"The court instructs the jury that even if they believe from the evidence that the defendant was guilty of negligence in allowing a stump to remain in dangerous proximity to the road-bed, and that the plaintiff was knocked off the engine or tender by said stump and injured, still the plaintiff is not entitled to recover in this action, if they believe from the evidence that he might have avoided the injury by the exercise of ordinary care and prudence on his part. [But to bar the plaintiff from recovery, his alleged act of negligence must have been such as he could reasonably expect would result in his injury, and moreover such negligence must be shown by a preponderance of all the evidence.]

### "DEFENDANT'S INSTRUCTION No. 10.

"The court instructs the jury that the plaintiff having offered no evidence of negligence on the part of the defendant in the selection of its repair-men and their foreman, even if they believe from the evidence that the injury complained of was produced by a stump left standing in dangerous prox-

imity to the road through the negligence of said repair-men or their foreman, still the plaintiff can not recover in this action if they further believe that the defendant used ordinary care in the construction and keeping of its road-bed in a safe condition.

### "DEFENDANT'S INSTRUCTION No. 11.

"The court instructs the jury that even if they believe from the evidence that the defendant had assigned to the section foreman the duty of having stumps and objects of like character removed from the section of the road on which the injury complained of happened, and that said section foreman had undertaken and attempted a short time before the accident to remove obstructions from the point of the road where said accident happened, and did remove part of the slip in which the stump, which it is claimed produced the injury complained of, is claimed to have stood, and that at that time the said stump stood in dangerous proximity to the track, but that said foreman so negligently removed said slip and obstructions as to leave the said stump in dangerous proximity to the track, and that in consequence of such neglectful discharge of duty by said section foreman the plaintiff was injured, then the negligence of said foreman is not the negligence of the defendant, and the plaintiff is not, by reason of that negligence, entitled to recover."

The court also gave defendant's instruction No. 3 modified so as to read as follows:

### "DEFENDANT'S INSTRUCTIONS No. 3.

"The court instructs the jury that if they believe from the evidence that the plaintiff was warned before the occurrence of the injury complained of, that it was dangerous to lean over from the tender to look at the wheels, and that in disregard of such warning he looked over and received the injury thereby, then the plaintiff can not recover, unless the jury further believe from the evidence that the plaintiff had reason to believe and did believe that *it was his duty to look* over to see whether the wheels were sliding, [and in determining whether he had reason so to believe, the jury must consider all the circumstances in proof before them, including his immature age and inexperience.]"

The modification of No. 3 consists in striking out the

words, "there was immediate and pressing necessity for his looking," and inserting in the place thereof the italicised words and adding the concluding words embraced in brackets.

The defendant excepted to the action of the court refusing to give each and all its eleven instructions, and to the giving of Nos. 1, 3, 4, 7, 8 and 9 as modified.

Before considering these instructions in detail it may save repetition to state some of the general principles applicable to the relation of master and servant.

It is sometimes stated as a general rule, that in all cases, where the master has committed the entire control or management of his business to agents, reserving no discretion or control to himself, such agents stand in the place of the master and their acts are, in law, treated as the acts of the master. This rule besides being difficult of application does not embody the doctrine advanced by the great majority of the cases, especially the more recent American cases. The doctrine thus advanced is much more liberal and comprehensive, embodying a large class of cases that are excluded from the operation of the general rule thus stated. The instances are rare in which the master, either by himself or some superior servant, does not reserve some supervision over every department of his busines, or at least reserve such a right in himself, and if the rule is to be confined to such narrow limits as a strict application of its letter and spirit indicates very few cases would come within its operation. The rule is no doubt entirely correct in those instances where the master has committed the absolute control and management of his business to a middleman. But such cases arise very seldom. The courts acting upon this rule have seemed to proceed upon the theory that a middleman could not act in a dual character, that is, as a representative of the master and also as a fellow-servant. A foreman, it is said, is a fellow-servant, so is a general manager or superintendent, and mere superiority of grade, rank or authority in the service does not remove such superior servant from the circle of co-service with all others engaged in the same service and subject to the same control. In *Wonder* v. *B. & O. R. R. Co.*, 32 Md. 411, it is decided that: "All who serve the same

master, work under the same control, deriving authority and compensation from the same source, and are engaged in the same general business, though in different grades and departments of it, are fellow-servants, each taking the risk of the other's negligence." *Hard* v. *Vermont & M. R. R. Co.*, 32 Vt. 473; *Farwell* v. *Boston & W. R. R. Co.*, 4 Metc. 49.

The proposition thus stated may be entirely correct as to all matters relating strictly to the common service or essential to secure the common end, but where the foreman, superintendent or other employe, by whatever name he may be known, is put by the master in his place to discharge some duty which the master owes to the servant, as to such duty he is not a co-servant, but the representative of the master, and the master, as to such duty, is bound by the acts or omissions of such middleman the same as though the acts had been done or omitted by himself personally. *Brabbitts* v. *The M. & N. W. R. R. Co.*, 37 Wis. 289; *Washburn* v. *Railroad Co.*, 3 Head. 638.

The correct rule on this subject, as deduced from the more recent and better considered American cases, has been, as we think, admirably stated by Mr. Wood in his excellent work on the "Law of Master and Servant," in sec. 438, as follows:

"Whenever the master delegates to another the performance of a duty to his servants which the master has impliedly contracted to perform in person, or which rests upon him as an absolute duty, he is liable for the manner in which that duty is performed by the middleman whom he has selected as his agent, and to the extent of the discharge of those duties by the middleman, he stands in the place of the master, but as to all other matters he is a mere co-servant; and the question is not whether the master reserved any oversight or discretion to himself, but whether he did in fact clothe the middleman with power to perform his duties to the servant injured."

In the application of this rule it has been held, that where a servant placed in a position of authority over other servants directs them to do an act not within the scope of their employment, and which exposes them to hazards and dangers not contemplated in the contract of service, the master is liable for injuries resulting therefrom to such servants, unless they

are chargeable with contributory negligence, or the act was done under such circumstances that the servants can be said to have assumed the risk. *Mann* v. *Oriental Print Works*, 11 R. I. 152; *Murphy* v. *Smith*, 19 C. B. (N. S.) 261.

The implied contract of service is that when the servant enters into the employment he assumes all the risks ordinarily incident to the business. The servant is presumed to have contracted with reference to all the hazards and risks ordinarily incident to the employment; consequently he can not recover for injuries resulting to him therefrom. *Noyes* v. *Smith*, 28 Vt. 59.

The servant must be supposed to have the risk and dangers of the service in his contemplation, when he voluntarily enters the service and agrees to accept the stipulated remuneration. He is not bound to enter a particular service, but if he does, he must take things as he finds them. *Seymour* v. *Maddon*, 16 Ad. & E. 226. Thus it will be seen that the servant in some cases not only assumes all risks ordinarily incident to the business, but also all other open and visible risks, whether usually incident to the business or not, and if he knows of open and visible defects, the fact that he had forgotten their existence will not help his case. *Huddleston* v. *Lowell Machine Shop*, 106 Mass. 282.

On the other hand, by the same implied contract, the master is bound to the exercise of reasonable care in reference to all the appliances of the business and is bound to protect his servants from injury therefrom by reason of latent or unseen defects, so far as human care and foresight can accomplish that result, but he does not stand in the relation of an insurer to the servant against injury and can only be held chargeable, when negligence can properly be imputed to him. The servant is bound to see for himself such risks and hazards, as are patent to observation, and must exercise his own skill and judgment in a measure and can not blindly rely upon the skill and care of the master; but where the danger is not patent, he has a right to presume that the master has discharged his duty, and that the appliances of the business are reasonably safe and free from hazard. *Michigan, &c. R. R. Co.* v. *Dolan*, 32 Mich. 510. The master is not justified in exposing the servant to extraordinary risks or hazards not

naturally incident to the service in which he is employed; and the same rule prevails where the superior servant directs a servant to do an act, which he knows or ought to know, the servant, by youth or inexperience, is not competent to do, or does not know or appreciate the hazard or danger of doing. *R. R. Co.* v. *Fort*, 17 Wall. 553; Wood Master & Servant, §§ 327, 439.

In *Mann* v. *Oriental Print Works*, 11 R. I. 152, it was held " that if the fireman, although employed only for a fireman, was placed under the orders of the engineer and was suddenly called upon to assist in throwing on a belt out of his own sphere, but within the sphere of duty of the engineer, and was thus subjected to a risk with which he was not acquainted, or to a peculiar and greater risk at that time, and of which he was not informed or cautioned, the defendant would be liable." And it was in that case further held, " that unless the fireman had been instructed not to obey the engineer except in the line of the fireman's employment, the engineer was authorized to call upon him for assistance in any matter within the engineer's department, and the defendant would be liable, even if there was another person who might more properly be called upon."

In this case the engineer was regarded as representing the master, and it, therefore, comes within the general rule hereinbefore announced and is fully sustained by other cases.— *Labor* v. *Chicago, &c., R. R, Co.* 52 Ill. 401; 4 Am. R. 616; *Railroad Co.* v. *Fort*, 17 Wall. 553; 2 Thomp. on Neg. 1040.

The case of *Cooper* v. *Railroad Co.*, 24 W. Va. 37, recently decided by this Court, was similar in many respects to the one now under consideration. In that case certain legal propositions were announced applicable to this case which must now be regarded as the settled law of this Court, among which are the following :

First.—It is the duty of a railroad company not only to furnish reasonably well constructed and safe machinery and appliances for its cars for the use of its employes engaged in operating its road, but also to exercise continued supervision over the same and to keep them in good and safe repair.

Second.—A railroad company can not divest itself of this duty, so as to relieve itself from responsibility for the non-

performance thereof, by delegating the duty to any of its servants in any department of its business; and if it does so and vests such servant with a controlling or superior authority in regard thereto, the negligence of such servant will be treated as the negligence of the company.

Third.—If such company or its servant, to whom it has delegated the performance of this duty, suffers such machinery, cars or appliances from any cause to become unsound, defective or unsafe, and this condition is known to the company, or by the exercise of due care and diligence on its part might have become known to it, and injury results therefrom to one of its employees, without any fault of his, while in the performance of his duty, the company is responsible to such servant so injured.

The reason, if not the very definitions used in the foregoing propositions, embraces the railway and track of a railroad company as well as its cars and machinery. The same necessity and considerations of duty and public policy, which would require the one to be well-constructed and kept in good and safe repair and condition for the use of employes and others, would apply equally to the other.

It may also be observed that, according to the rules and principles hereinbefore stated and discussed, the knowledge of the unsafe or defective condition of the machinery, &c. mentioned in said third proposition, if brought home to the servant or middleman, to whom the duty of remedying or repairing such machinery &c. has been delegated, or if he by the use of due care and diligence ought to have discovered it, will be considered notice to or knowledge by the company. What is notice to such servant will be treated as notice to the company and what he ought to know and might know by due care and diligence, will be regarded as known by the company, and it will be held accountable in such case to the same extent that it would, if it had the knowledge or means of knowledge possessed by such servant. If the rule were otherwise and the company's personal knowledge of defects in its road or machinery be necessary to its liability, then the more it neglects its business and abandons it to others the less will be its liability.—Wood Master & Serv't. § 438.

It is apparent from the foregoing statement of the rules

and principles of law, that there is nothing in plaintiff's, *first, second* and *third* instructions which could operate to the prejudice of the defendant.    *B. & O. R. R. Co.* v. *Strickler,* 51 Md. 47, 69.

The plaintiff's *fourth* instruction is fully sustained by both reason and law.    In an action for neglect and injury to the person of the plaintiff he may recover the expense of his cure, the value of the time lost by him during his cure, and a fair compensation for his physical and mental suffering caused by the injury as well as for any permanent reduction of his power to earn money.    Shear. & Red. on Neg., sec. 606; *Ransom* v. *N. Y. & E. Railroad Co.,* 15 N. Y. 415; *Memphis, &c., Railroad Co.* v. *Whitfield,* 44 Miss. 466; *Masters* v. *Warren,* 27 Conn. 393; *Holyoke* v. *Grand Trunk Railroad Co.,* 48 N. H. 541; *Wade* v. *Leroy,* 20 How. (U. S.) 34; *Wilson* v. *City of Wheeling,* 19 W. Va. 325.

It is claimed, however, that this instruction does not exclude the damages suffered by loss of time during the minority of the plaintiff, as his father and not the plaintiff was entitled to recover for such loss.    If the defendant had asked the trial-court to make this qualification to the instruction, it would then be in a position to have this question decided, but as it did not do so and the instruction being correct as a general proposition of law, it can not be objected to for the first time in this Court.

The defendant's *fifth, sixth, tenth* and *eleventh* instructions were each clearly erroneous and properly rejected by the court.    The eleventh is unsupported by any decision so far as I have been able to discover, and the others are based upon the theory of law as advanced in some of the earlier cases, but which has been overruled and abandoned by the better considered and more recent decisions in this country; and they are besides in positive conflict with the principles hereinbefore announced and the decision of this Court in *Cooper* v. *Railroad Co.,* 24 W. Va. 37.

I see no objection to the modification made to the defendant's *first* instruction.    The plaintiff by entering the service of the defendant certainly did not take upon himself the risks caused by the want of proper care on the part of the defendant in the construction and repairing of its road.

This is the extent of the modification and without it the instruction might have misled the jury; but whether it might or not, the instruction as modified was not to the prejudice of the defendant. *Tompkins* v. *Kanawha Board*, 21 W. Va. 224, 230–31.

The defendant's *second* instruction was rightly refused; because, if the proposition contended for by the defendant, viz : that where there is a safe and an unsafe way of doing a required thing known to the plaintiff, and he does it in the unsafe way and is injured thereby he can not recover, still the instruction is wrong for the reason that it tells the jury that, if the plaintiff "had 'reasonable opportunity to know and ought to have known that it was dangerous," he was guilty of contributory negligence, &c. He had a right to presume that the defendant had done its duty and that its road was in safe condition. He had the right to assume in the absence of *actual* knowledge, that it was safe to look over on either side of the train, and it was not his duty to use diligence to ascertain that it was dangerous to look over on the one side and not on the other. It is not probable that he could discover by mere observation that the stump stood within six inches of a passing train, and therefore he might have had reasonable opportunities by passing over the road to observe the stump, yet he might not know that it was in dangerous proximity to the road. The only certain or probable mode of determining the danger of looking over on the hill-side, would be by measurement, and there was no evidence that the plaintiff had informed himself in that mode or that it was his duty to do so.

This instruction is also objectionable because it tells the jury that certain facts, if proved, constitute contributory negligence on the part of the plaintiff, when there were other facts, such as the plaintiff's inexperience, and that he was directed by his superior to look over at the wheels at the very time and place he did, which are referred to in other instructions and which the jury had a right to consider. In *Washington* v. *B. & O. R. R. Co.*, the leading case on contributory negligence in this State, it is decided that, "A party is only responsible for the natural consequences which flow from his negligence, that is, such consequences as he might

reasonably expect to follow from his negligence."—17 W. Va. 213.

The question of negligence is one peculiarly for the determination of the jury from all the facts and circumstances.—*Snyder* v. *Railway Company*, 11 W. Va. 16. In *Washington* v. *B. & O. R. R. Co.*, *supra*, the Court said: "Negligence is a mixed question of law and fact generally, and what particular facts constitute neligence is generally a question of fact for the determination of the jury from all the facts bearing on the subject, rather than a question of law for the determination of the court. * * * There may be some cases where the question of negligence may properly be one of law for the court; but such case must present some *prominent act not depending upon surrounding circumstances for its quality, and in regard to the effect and character of which no room is left for ordinary minds to differ.*"—17 W. Va. 214-15. This principle of law was re-examined and affirmed by this Court in *Johnson* v. *Railroad Company*, 25 W. Va. 570.

This is my conclusion and decided conviction as to the impropriety of said second instruction; but the other members of the Court do not agree with me in this conclusion. They think according to the circumstances and the evidence in this case said second instruction should have been given to the jury, and that the circuit court erred in refusing to give it as requested by the defendant, and that for this error and for this alone the judgment of said court must be reversed.

The defendant's third instruction as asked was properly refused, and it might have been rightly refused with the modifications for the reasons stated and authorities referred to in commenting on the defendant's second instruction. This instruction is very indefinite as to the character of the warning, on account of which the jury are told the plaintiff can not recover. It is generally regarded as dangerous to be on the platform of the car or to look out on the side of it at any time or place when the train is in rapid motion, but the duties of a brakeman do not permit him to regard such danger. By his contract of service he takes the hazard of such dangers. There is not a scintilla of evidence that the plaintiff was told or warned by any one, that it was more or less dangerous to look over on the one side of the train than the other. The

testimony is, that soon after the train started from Mineville the plaintiff was seen looking over at the wheels and he was then told he had better take his head in or he would get hurt or get it knocked off before he got to Shaw. It does not appear from which side of the car he was looking or that any particular obstruction or danger was to be guarded against by him. The only inference the plaintiff could have naturally drawn from this warning or caution would be, that it was dangerous to look over at the wheels on either side or at any place. It being shown that he was not a regular brakeman and had very little experience in the business, the natural inference is that the warning was intended and understood as nothing more than a general precaution. This was all the jury could properly infer from the evidence, and therefore the instruction, which implied that the jury might proper.y find that the plaintiff was warned against looking over at the wheels at a particular place or on the hill-side of the train, was not warranted by the evidence and should have been refused as being a mere abstraction. Considering that the evidence tended to prove that he was told by the fireman to look at the wheels without then cautioning him in any manner and the fact of his youth and inexperience, the modification by the court was not to the prejudice of the defendant or improper in itself. These considerations also sufficiently show the impropriety of the defendant's *fourth* and *seventh* instructions as asked, and the propriety of the modifications made therein by the court. *Mann* v. *Oriental Print Works*, 11 R. I. 152; Pierce on R. R. 379, and cases cited.

It was not error to modify the defendant's *eighth* and *ninth* instructions in the manner it was done by the court. In *Washington* v. *Baltimore & Ohio R. R. Co.*, 17 W. Va. 190, this Court decided that " By contributory negligence is meant such negligence on the part of the plaintiff as contributes to the injury, that is, *directly* in part causes it. It is therefore not contributory negligence for the plaintiff to be guilty of a negligent act which might have produced the injury if, before it actually results the defendant is guilty of some negligent act which was the immediate cause of the injury, even though no damage could have resulted to the plaintiff, had he not been originally negligent. To bar the plaintiff from

recovery, his alleged act of negligence must be such as he could reasonably anticipate would result in his injury." It is evident the modifications in these instructions were made with reference to and for the purpose of making them conform to this decision, as the language is almost identical with that used in the last sentence above quoted. Wood on Master and Servant, sec. 319.

In some States it has been held that the burden of proving the plaintiff's freedom from negligence rests upon the plaintiff; but the law is settled otherwise in this State. *Snyder* v. *Railway Co.*, 11 W. Va. 14, 30; *Sheff* v. *Huntington*, 16 W. Va. 307; *Johnson* v. *Railroad Co.*, 25 W. Va. 570; *Hugh* v. *Railway Co.*, 100 U. S. 213; Whart. on Neg., sec. 423; 2 Thomp. on Neg. 1175, sec. 24.

During the trial the plaintiff introduced as a witness one Patton, who testified that in the spring of 1882 he worked for the defendant as a hand under Fulk, the foreman of a gang of men employed in repairing the defendant's railway track and he remembered a stump located about the place where the plaintiff was injured standing in a slip part of the way down the bank inclined towards the road which would probably clear a passing train about eight inches; that in the latter part of March 1882, he helped to clear out the slip at that point and the stump was left standing, that Fulk was generally present when witness was working under him and he (Fulk) had authority to employ and discharge the men of his gang. The plaintiff then asked said witness: "What do you know as to said Fulk's knowledge of the situation of that stump at the time of which you have spoken?" to the asking of which question the defendant objected, but the court overruled the objection and the witness answered: "I know that he had knowledge of the stump being there." The defendant excepted to said ruling of the court and insists that the same was erroneous.

We have seen that it is the duty of the defendant to construct and keep its roadway and track in good and safe repair and condition, and that the acts and omissions of the servant or agents to whom it may delegate this duty will be regarded as the acts or omissions of the defendant. It is immaterial that such servant is a co-servant with the plain-

tiff, the material inquiry is, was he entrusted with a duty which devolved upon the defendant and in the performance or non-performance of which he represented the defendant. It appears that Fulk was a foreman entrusted with the duty of keeping the defendant's railway and track in repair. He was, therefore, under the rules before announced entrusted with a duty due from the defendant. His omission was the omission of the defendant and his knowledge of the dangerous position of the stump was the knowledge of the defendant; and his negligence was the negligence of the defendant; consequently, the court did not err in permitting the said question and answer. *Cooper* v. *Railroad Co.*, 24 W. Va. 37; *Snow* v. *Housatonic Railroad Co.*, 8 Allen 441; *Flike* v. *Boston & Albany Railroad Co.*, 53 N. Y. 459; 13 Am. R. 545; *Lewis* v. *Railroad Co.*, 59 Mo. 495; 21 Am. R. 389.

The defendant introduced one O'Brien, as a witness, who testified that he had been engaged in railroading for twelve years, that he had been employed on the Balt. & Ohio, the Pittsburgh and Connellsville and the Long Island railroads; that he was well acquainted with the defendant's road at the time the plaintiff was injured. The defendant then asked this witness: "How does the construction of this road, with reference to leaving banks and obstructions near the track, compare with other roads you are acquainted with?" On objection by the plaintiff the court excluded this question. The defendant insists that such exclusion was error.

The question before the jury did not relate to the construction of the defendant's road or its general condition, but whether or not a particular stump had been negligently permitted by the defendant to remain in dangerous proximity to the road. The witness did not pretend to know anything about this stump. The question was therefore irrelevant and properly excluded from the jury.

The only remaining assignment of error is, that the court improperly refused to grant the defendant a new trial because the verdict was contrary to the evidence. Since the judgment must be reversed and a new trial granted for the reason that the court excluded from the jury the second instruction asked by the defendant, it would be improper to consider this assignment.

For the error aforesaid the judgment of the circuit court is reversed, the verdict of the jury set aside and a new trial awarded the defendant.

REVERSED.   REMANDED.